Carmen DiVITO

v.

Raphael GREENSTEIN, M.D.
and
Harold Dillon, M.D.

Civ. A. No. 71–2498.

United States District Court,
E. D. Pennsylvania.

April 27, 1972.

David Kanner, Philadelphia, Pa., for plaintiff.

James L. Griffith, Charles B. Burr II, Philadelphia, Pa., for defendant Dillon.

### MEMORANDUM AND ORDER

JOSEPH S. LORD, III, Chief Judge.

Defendant Dillon has moved to dismiss this diversity complaint on the ground, inter alia, that Pennsylvania law does not permit recovery for purely emotional stress unless "the plaintiff was in personal danger of physical impact because of the direction of a negligent force against him and * * * plaintiff actually did fear the physical impact." Niederman v. Brodsky, 436 Pa. 401, 413, 261 A.2d 84, 90 (1970). Indeed, both parties in their briefs seem to treat the action as one involving mental stress alone, not induced by fear of a physical impact. On this assumption, plaintiff urges us to extend Niederman by predicting that Pennsylvania will go beyond the narrow confines of that case. *Cf.* Putnam v. Erie City Mfg. Co., 338 F.2d 911 (C.A.5, 1964). Such an inquiry, though, is heady stuff and "most troublesome and most unsatisfying in its consequences." Clark, State Law In the Federal Courts: The Brooding Omnipresence of Erie R. R. Co. v. Tompkins, 55 Yale L.J. 267,290 (1946). Fortunately, as we read the pleadings, we need not indulge in such legal soothsaying in this case.

■■ Of course, on a motion to dismiss, the averments of the complaint must be accepted as true, and the motion will be denied if proof of any of these averments would entitle plaintiff to recovery. Paragraph 10 of the complaint contains the standard allegations of a medical malpractice action, in addition to averments that defendant negligently failed to advise plaintiff of a changed diagnosis. Paragraph 11 alleges:

"As a result of the aforesaid, plaintiff sustained injury to his body, head and limbs, their bones, cells, tissues, nerves, muscles and functions; injury to his neck and back, their bones, cells, tissues, discs, nerves, muscles and functions; extraordinary and extreme nervous upsetment because of fear that he has been living with in contemplation of early death as a result of the misdiagnosis and the failure to inform him of the change in diagnosis and to notify him that he did not have a much shortened life expectancy."

It is at once apparent that plaintiff is complaining of bodily injury as a result of defendant's alleged malpractice. It may well be that plaintiff will be unable to support these allegations at trial. But on the pleadings, this is not a Niederman situation and if the allegations are proved, plaintiff will be entitled to a verdict.

■ The other ground for dismissal urged by the defendant is the asserted bar of the statute of limitations. Act of June 24, 1895, P.L. 236, § 2, 12 P.S. § 34. Since an affidavit accompanies this ground for dismissal, under the provisions of F.R.Civ.P. 12(b), we will treat the motion as a motion for summary judgment under F.R.Civ.P. 56. Plaintiff has filed no counter-affidavits.

The complaint alleges that plaintiff came under defendant's care in 1966, when his condition was diagnosed as amyotrophic lateral sclerosis. He alleges that he was advised that this condition would substantially shorten his life expectancy. In the summer of 1971, plaintiff learned for the first time that he was not suffering from amyotrophic lateral sclerosis.

The affidavit of James Lewis Griffith, Esq. avers that he is defendant's counsel; that in 1967, the original provisional diagnosis of amyotrophic lateral sclerosis was changed to one of cervical spondylosis and that this appears in the hospital record which has always been available to plaintiff.

In Carney v. Barnett, 278 F.Supp. 572 (E.D.Pa.1967), we said, at page 575:

"We think the correct rule, distilled from the authorities, is this: the statute begins to run as of the date of injury unless, in the exercise of reasonable diligence, the plaintiff [sic] could not have ascertained defendant's culpability within the statutory period. When that culpability could not reasonably have been so ascertained, the statute begins to run as of the date it could reasonably have been discovered.

\* \* \* \* \* \*

"Of course, the question of knowledge in cases such as this is usually a question for the jury. Daniels v. Beryllium, supra; Smith v. Bell Tel. Co., supra."

■ In Carney, the record was uncontradicted as to defendant's knowledge. Here, however, even accepting Mr. Griffith's affidavit, we think it will be a jury question as to the reasonableness of plaintiff's conduct. A jury could well conclude that, in the face of a diagnosis by highly respected doctors, reasonable diligence would not require plaintiff to seek out the hospital records on his own in order to ascertain whether his doctor told him the truth. As the case now stands, the question of the statute of limitations will be for the jury.