Frank J. **HUBER** and Louise M. **Huber,**
husband and wife

v.

McELWEE–COURBIS CONSTRUC·
TION CO.

DORR–OLIVER, INC.

v.

GLACE & GLACE, INC.

HARRY A. RESSLER, INC.

v.

WEST GOSHEN TOWNSHIP and West
Goshen Township Sewer Authority.

Civ. A. No. 73–1645.

United States District Court,
E. D. Pennsylvania.

Dec. 30, 1974.

10. It may be argued that the state's compelling interest in potential human life justifies the proscription of the use of saline, since this process is more likely than other processes to result in the death of the fetus. Thus a persuasive argument can be made that the power to proscribe abortions includes the power to prohibit a means of abortion deemed most lethal to the fetus. We cannot reach this argument here, however; first, it has not been briefed or fully urged upon us, and second, it could only apply in the period following viability, Roe v. Wade, *supra*, 410 U.S. at 163, 93 S.Ct. 705, whereas Section 9 applies both to the second and third trimesters. If in the course of time prostaglandin proves to be a safer, more efficacious and more readily available medical procedure than saline, I have no doubt that it will become the procedure predominately in use in second and third tri-

mester abortions. But this process should take place in the customary way, through research and experience, and not under criminal sanctions imposed by a single legislature. The mother is likewise protected against an individual practitioner who "abuses the privilege of exercising proper medical judgment [by] the usual remedies, judicial and intra-professional * * *." Roe v. Wade, *supra*, 410 U.S. at 166, 93 S.Ct. at 733.

11. Noting that there were no physicians in Kentucky competent in the technique of prostaglandin amnio infusion, that there were neither centers nor doctors in the area licensed to perform the procedure and that an effective and safe method of abortion should be generally available, a three-judge court in Kentucky held a similar section invalid. Wolfe v. Schroering, 388 F.Supp. 631, Civil Action No. C–74–186–L(B) (W.D.Ky., 1974).

Edwin F. McCoy, Philadelphia, Pa., for plaintiffs.

Richard W. Hopkins, Philadelphia, Pa., for McElwee-Courbis.

William J. Kennedy, Philadelphia, Pa., for Dorr-Oliver.

Anthony J. Damiano, Philadelphia, Pa., for Ressler.

Glenn C. Equi, Philadelphia, Pa., for W. Goshen Twp. and W. Goshen Twp. Sewer Authority.

Richard W. Cleckner, Harrisburg, Pa., for Glace & Glace.

## MEMORANDUM

GORBEY, District Judge.

This action arises out of an explosion occurring at the West Goshen Township Sewer plant on or about November 14, 1966. Defendant McElwee-Courbis Construction Company has moved for summary judgment on the ground that plaintiffs' claim is barred by the statute of limitations. Defendant Dorr-Oliver, Inc. has joined in that motion. Third-party defendants Glace & Glace, Inc. and Harry A. Ressler, Inc. have filed similar motions. In response, plaintiffs assert that the statute of limitations did not begin to run until sometime in 1973 and that the defendants, because of their fraud and concealment, should be estopped from asserting the statute of limitations as a defense to this action.

The Pennsylvania statute of limitations for actions involving personal injuries reads as follows:

"Every suit hereafter brought to recover damages for injury wrongfully done to the person, in case where the injury does not result in death, must be brought within two years from the time when the injury was done and not afterwards; in cases where the injury does result in death the limitation of action shall remain as now established by law." 1895, June 24, P.L. 236, § 2. 12 P.S. § 34.

While the statute states that it begins to run from the date of injury, it has been held that this must be read in the light of reason and common sense. Ayers v. Morgan, 397 Pa. 282, 154 A.2d 788 (1959). The Pennsylvania Supreme Court in applying the statute has held that:

"The statute, however, says that the suit must be 'brought within two years from the time when the injury was done.' The injury is done when the act heralding a possible tort inflicts a damage which is physically objective and ascertainable." Ayers v. Morgan, *supra*.

In the Ayers case a surgeon left a surgical sponge in the plaintiff's abdomen. Nine years later, investigation as to the cause of abdominal discomfort revealed the sponge. The court held that the plaintiff's claim was not barred by the statute of limitations because it was filed within two years of the discovery of the injury.

In the case of Smith v. Bell Tel. Co. of Penna., 397 Pa. 134, 153 A.2d 477 (1959), the Pennsylvania Supreme Court stated the rule as to subsurface injury as follows:

"As for the statute of limitations, there seems to be no dispute here that the statute runs, on causes arising from subsurface injury, from the time of discovery of the cause of the harm or the time when the cause of the harm reasonably should have been discovered, whichever is earlier."

In the Smith case the court held that it was a question for the jury to determine within what time the plaintiff could have reasonably discovered that the cable laid by the defendants was causing plaintiff's sewer pipe to back up into his basement.

This liberalized interpretation of the Pennsylvania statutes of limitation has been applied to areas other than medical malpractice and subsurface injuries. *See, e. g.,* Med-Mar, Inc. v. Dilworth, 214 Pa.Super. 402, 257 A.2d 910 (1969).

The plaintiffs urge that "the statute begins to run as of the date of injury

unless, in the exercise of reasonable diligence, the plaintiff could not have ascertained *defendant's culpability* within the statutory period." (Emphasis added) This language comes from the case of Carney v. Barnett, 278 F.Supp. 572 (E.D. Pa.1967) where the court stated at page 575:

> "We think the correct rule, distilled from the authorities, is this: the statute begins to run as of the date of injury unless, in the exercise of reasonable diligence, the plaintiff could not have ascertained defendant's culpability within the statutory period. When that culpability could not reasonably have been so ascertained, the statute begins to run as of the date it could reasonably have been discovered."

In the Carney case, the court directed a verdict in favor of the defendant. The evidence showed that when plaintiff's decedent knew, more than two years before the suit was commenced that he was being treated for thallium poisoning and knew that he had been exposed to thallium on his job, the plaintiff's decedent could have very simply ascertained the identity of the seller of the thallium and thus the action was barred by the Pennsylvania statute of limitations.

 This ruling is not inconsistent with Pennsylvania case law, but the language used (*i. e.*, defendant's culpability) is not that used by the Pennsylvania courts. The Pennsylvania courts have stated that the statute begins to run from the time the plaintiff discovers the injury or the cause of his harm or reasonably should have discovered such injury or cause. Smith v. Bell Tel. Co. of Penna., *supra*;[1] Ayers v. Morgan, *supra.* See also Barshady v. Schlosser, 226 Pa.Super. 260, 313 A.2d 296 (1973). Our research has not disclosed one Penn-

sylvania appellate court which has used the language "defendant's culpability".

The language "defendant's culpability" was also used in the case of DiVito v. Greenstein, 55 F.R.D. 58 (E.D.Pa.1972). In this medical malpractice case the court ruled that it was a jury question whether a doctor's misdiagnosis could have been discovered by the exercise of reasonable diligence within the statutory period. There the diagnosis was changed in the hospital records, but for five years the plaintiff did not discover that he was not suffering from the disease and that he was not facing an early death. The court ruled that it was for the jury to decide if reasonable diligence would have disclosed the changed diagnosis within the statutory period. Again the result comports with the Pennsylvania law. Until the plaintiff discovered the misdiagnosis, he did not have reason to know that he had been harmed, let alone discover its cause. Two other district courts have adopted the language of the Carney case in applying the Pennsylvania statute of limitations in situations where we think the language used by the Pennsylvania courts would produce the same result, Hoeflich v. Wm. S. Merrill Co., 288 F.Supp. 659 (E.D.Pa.1968); Tucker v. Capital Machine Co., Inc., 307 F.Supp. 291 (M.D.Pa. 1969).

In dealing with a similar problem in a malpractice case, the court in the case of Gemignani v. Phila. Phillies National League Baseball Club, Inc., 287 F.Supp. 465 (E.D.Pa.1967) characterized the Pennsylvania law as follows, at page 467:

> "Moreover, it would require the most narrow reading of the language of those cases and the ignoring of the policy basis thereof to fail to recognize that 'discovery of the cause of harm' must comprehend discovery of

---

[1]. We agree with the court in Daniels v. Berryllium Corporation, 227 F.Supp. 591 (E.D.Pa.1964), when it stated:
"I am satisfied that at the very least the traditional separation of cases of subter-

ranean property damage from personal injury cases in Pennsylvania no longer exists."

both the facts or occurrences and also discovery of reason to believe that those facts might bear a causative relationship to the harm.

"While plaintiff certainly must exercise reasonable diligence to inform himself of the facts and how they may relate to each other, the statute should not begin to run until, through reasonable diligence he should have reason to know that a *claim* exists."

Malpractice cases such as these present difficult questions. However, we see no need to deviate from the language used by the Pennsylvania courts to arrive at the same results. For as stated before, until one discovers, or through reasonable diligence should discover, the misdiagnosis or improper procedure used by the physician, he does not have reason to know he has been injured,[2] and thus under the language of the Pennsylvania cases the statute would not run.

We think the language used by the Pennsylvania courts is that to be used by the Federal Courts in diversity cases. To literally apply the language of Carney and DiVito would mean that in many cases, including the case at bar, the plaintiff could get to a jury no matter how stale his claim is, simply by alleging that he did not know and could not have reasonably discovered that the defendant was negligent.

It is clearly the law in Pennsylvania that where the defendant attempts to hide his negligence or breach of duty he is estopped from asserting the statute of limitations. See discussion, *infra*.

The burden has been and should remain on the injured party once he discovers the cause of his injuries to determine within the statutory period whose negligence or breach of duty, if any, was behind the cause in the absence of fraud or concealment. The language of Ayers v. Morgan, *supra*, makes this proposition clear. In that case the Pennsylvania Supreme Court stated: "When the act heralding a *possible* tort . ." (Emphasis added) They did not say, a "reasonably discoverable" tort. Thus, according to the Pennsylvania courts the statute runs when the injury or cause of harm is discovered or reasonably discoverable, not the tort itself, in the absence of fraud or concealment.[3]

In holding that the Pennsylvania statute of limitations runs from the reasonable discovery of the "injury or cause of harm" the Pennsylvania courts[4] have stretched the statutory language to its limits. To go further and follow the language of my brothers on the federal bench and hold that the statute runs from the date of the reasonable discovery of "defendant's culpability" would violate the spirit of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and would invade the province of the Pennsylvania legislature and courts.[5]

■■ In the case at bar it is unquestioned that the plaintiff knew of the cause of his injuries (*i. e.*, the explosion) on November 14, 1966. The require-

2. To hold otherwise would mean that each act of a doctor, lawyer, etc., should be deemed a "possible tort" and would destroy the confidence and trust that the public should and must have in their professional advisors. *See* Skyline Builders, Inc. v. Kellar, 50 D & C2d 19 (Lehigh 1970).

3. In the case at bar when the act heralding the possible tort (*i. e.*, the explosion) occurred, the potential tort-feasors were known and consisted of a limited group. This is not a case where the identity of the potential tort-feasors is unknown and undiscoverable. With the liberal and extensive discovery afforded

litigants in the courts today, we see no reason to hold that until plaintiff discovers or reasonably should discover the ultimate and detailed facts concerning defendants' culpability, the statute will not run and he should not be required to file suit.

4. Ayers v. Morgan, *supra*; Smith v. Bell Tel. Co. of Penna., *supra*.

5. We are mindful of the admonition in Daniels v. Beryllium Corp., 227 F.Supp. 591 (E.D.Pa.1964). "A federal court must, of course, be careful not to permit its understanding of local law to be distorted by the prevailing federal view."

ments of the statute were met and the statute began to run.[6] The fact that the plaintiffs did not think to charge defendants with a breach of duty until 1973 when they learned of a settlement in the property damage case arising out of the same explosion[7] does not change this result. Mere mistake, misunderstanding or lack of knowledge does not toll the running of the statute of limitations. Shaffer v. Larzelere, 410 Pa. 402 at 405, 189 A.2d 267 (1963); Walters v. Ditzler, 424 Pa. 445, 227 A.2d 833 (1967). The legislative policy underlying the statute of limitations is not to be treated lightly.[8] Thus we hold that in this case the statute of limitations began to run from the date of the explosion, November 14, 1966, which was, in the language of the statute "from the time the injury was done".[9]

Having so held, we must now resolve plaintiffs' claim that the defendants by reason of their fraud and concealment should be estopped from asserting the statute of limitations as a defense to his claim.

In support of his claim that the defendants are guilty of fraud and concealment with respect to their part in the explosion of November 14, 1966, the plaintiff has submitted an affidavit.

This affidavit reads in pertinent part as follows:

"Upon my return to work in July of 1967, I began an inquiry as to the cause of the explosion since I did not know how or why it had occurred. I presented the facts as I knew them to engineers and other persons whom I considered knowledgeable about such matters but not one could advise how or why the explosion occurred. Among those whom I questioned were employees of Glace & Glace, the Consulting Engineer for the sewage treatment facility, including Ivan M. Glace, President of Glace & Glace, and not one of those persons from Glace & Glace professed to know or suspect the cause of the explosion. At no time did the employees of McElwee-Courbis nor Dorr-Oliver, both of whom I now understand investigated the explosion, ever tell me nor in any way indicate the cause or that any failure on their part contributed to the explosion."

 It has been established in Pennsylvania that if through fraud or concealment the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of the statute of limitations. Nesbitt v. Erie Coach Company, 416 Pa. 89,

6. On that date there was an act (*i. e.*, an explosion) heralding a possible tort and known injuries.

7. See plaintiff's affidavit in support of his opposition to defendants' motion for summary judgment.

8. The Pennsylvania Supreme Court in Schmucker v. Naugle, 426 Pa. 203, 231 A.2d 121 (1967) stated this policy at 231 A.2d 123: "The Act . . . requires that every action for personal injury must be brought within two years from the date of injury . . . 'The defense of the statute of limitations is not a technical defense but substantial and meritorious. . . . Such statutes are not only statutes of repose, but they supply the place of evidence lost or impaired by lapse of time, by raising a presumption, which renders proof unnecessary. . . . ' Statutes of limitation are vital to the welfare of society and are favored in the law. They are found and approved

in all systems of enlightened jurisprudence. They promote repose by giving security and stability to human affairs. An important public policy is at their foundation. They *stimulate to activity and punish negligence* . . . ."

9. While not controlling here, California has stated the rule as follows: "It is the general rule that the applicable statute of limitations begins to run even though the plaintiff is ignorant of his cause of action or of the identity of the wrongdoer." Howe v. Pioneer Manufacturing Co., 262 Cal.App.2d 330, 68 Cal.Rptr. 617 (1968). Which is in accord with, if not more restrictive than, our decision today. *See also* Baker v. Beech Aircraft Corporation, 39 Cal. App.3d 315, 114 Cal.Rptr. 171 (1974); Rubino v. Utah Canning Co., 123 Cal.App.2d 18, 266 P.2d 163 (1954).

204 A.2d 473 (1964); [10] Plazak v. Allegheny Steel Co., 324 Pa. 422, 188 A. 130 (1936). Once it has been established that the statute of limitations has run, the burden is on the plaintiff to establish the estoppel. Nesbitt v. Erie Coach Company, *supra*; Melhorn v. Amrep Corp., 373 F.Supp. 1378 (M.D.Pa.1974). The concealment which is required to invoke an estoppel to the statute of limitations must be an affirmative, independent act of concealment. Overfield v. Pennroad Corp., 146 F.2d 889 (3d Cir. 1945). Where acts constituting the alleged fraudulent concealment occurred after the statute of limitations has run they do not create an estoppel. Hedges v. Primavera, 218 F.Supp. 797 (E.D.Pa. 1963). If the facts of what occurred are not in dispute, the determination of whether the defendant is estopped from asserting the statute of limitations as a bar to plaintiff's action is one of law for the court, not one of fact for the jury. Nesbitt v. Erie Coach Co., *supra*; Melhorn v. Amrep Corp., *supra*; Dascenzo v. Blain et al., E.D.Pa., Civil Action No. 73–2595, opinion dated Oct. 15, 1974.

Here, plaintiff's affidavit amounts to a claim that when asked, the defendants responded that they did not know the cause of the explosion. There is no evidence that at the time this was not the truth. The fact that, in 1973, almost five years after the statute had run, the defendants made a settlement in another law suit regarding the same explosion, does not mean that the defendants to this day have any evidence of their responsibility for the explosion. To hold otherwise would run contrary to the judicial policy to encourage amicable settlements of disputes.

The key is what did the defendants do during the two years while the statute was running to induce the plaintiff to sit on his rights. Stating that they did not know the cause of the accident where there is no showing that they had a duty to discover such cause and where no evidence was put forth by the plaintiff to show that this was not true does not constitute sufficient circumstances to justify an estoppel. *See* Walters v. Ditzler, *supra*. This is not a case where there is evidence that defendants made any misrepresentations as to their liability. e. g., Hoeflich v. Wm. S. Merrill Co., *supra*. There must be some evidence of concealment, misrepresentation, deception or other such actions by the defendants. Here the plaintiffs have put forth none. Discovery in this case has been extensive, had there been any other facts which support plaintiffs' claim of concealment they should have been presented. Accordingly, we hold defendants are not estopped from asserting the statute of limitations and their motions for summary judgment will be granted.

---

10. In the *Nesbitt* case the Pennsylvania Supreme Court stated, "The burden of proving the existence of such fraud or concealment is upon the asserting party by evidence that is clear, precise and convincing."