**VISOR BUILDERS, INC., Plaintiff,**

**v.**

**DEVON E. TRANTER, INC., Mount Carmel Area School District, and Aetna Casualty and Surety Company, Defendants.**

Civ. No. 76–1462.

United States District Court, M. D. Pennsylvania.

Dec. 14, 1978.

914

Lewis H. Markowitz, York, Pa., for plaintiff.

Andrew A. Leavens, Shamokin, Pa., Linda S. Martin and Matthew Strickler, Philadelphia, Pa., Stanley J. Zlocki, Mount Carmel, Pa., Jeffrey B. Rettig, Harrisburg, Pa., for defendants.

## MEMORANDUM

NEALON, Chief Judge.

Plaintiff, Visor Builders, Inc. (Visor) filed this diversity action on December 1, 1976. Named as defendants are Devon E. Tranter, Inc., (Tranter or the prime contractor), Mount Carmel Area School District (School District), and Aetna Casualty and Surety Company (Surety). Visor is basically seeking recovery of monies, including progress payments, reimbursements for material and labor supplied, lost profits, and consequential damages, allegedly due it under its subcontract with Tranter, which was the prime contractor on a written construction agreement with the School District. The School District has asserted cross-claims against both the defendants, stating in essence that it is entitled to indemnification if it is found liable. Tranter did not answer or otherwise respond to the complaint and default judgment was entered against it on July 27, 1978. See document number 52, filed July 27, 1978.[1] Presently before the court is a motion by the Surety for judgment on the pleadings based on the running of the statute of limitations. Since I am considering material outside the pleadings, this motion will be construed as a motion for summary judgment. Also before the court is a motion for summary judgment filed by the School District. Both motions will be granted.

The material facts in this action are not in dispute.[2] On or about December 4, 1974, Tranter and the School District entered into a contract, the prime contract, for an addition and alterations to the Kulpmont Elementary School, Kulpmont, Pennsylvania. Prior to the prime contract being signed, on October 24, 1974, a payment bond was issued with Tranter as the principal, defendant Aetna Casualty and Surety Company as the Surety, and defendant School District as the obligee. This payment bond was a necessary prerequisite to the prime contract under the "Public Works Contractor's Bond Law of 1967" (Bond Law), Pa. Stat.Ann. tit. 8 §§ 191 et seq. (Purdon).

On December 18, 1974 plaintiff and Tranter entered into an agreement, hereinafter the subcontract, whereby plaintiff basically agreed to furnish and install certain aluminum windows needed under the prime contract in return for $46,000. This $46,000 was to be paid in three installments. The first phase of the subcontract was completed and Tranter timely paid plaintiff the first progress payment of $23,000. Thereafter, a dispute arose as to whether plaintiff had completed the second phase of the subcontract, see infra, and was, therefore, entitled to the second payment of $11,500. However, it is undisputed that the last labor or materials supplied by plaintiff to the prime contractor or the School District was on or before April 22, 1975.[3] After that

---

1. No default was entered on the School District's cross claim.

2. In accordance with the appropriate procedures for ruling on a summary judgment motion, I accept as true all the uncontroverted factual allegations of the complaint, all the factual allegations asserted in the exhibits and affidavits submitted by the plaintiff in opposition to the motions, and the uncontradicted factual allegations contained in the affidavits and exhibits submitted by the School District in support of its motion. Also, I accept as true against the Surety the facts alleged in plaintiff's brief filed in opposition to the Surety's motion.

3. Plaintiff also alleges that at the instance and request of Tranter it purchased $5,000 worth of material to be used in the third and final phase of its subcontract. It is claimed that Tranter did not reimburse plaintiff for this material. Apparently the material was never used in the construction project.

date Visor was in effect discharged as the subcontractor and Tranter finished the job.

On September 4, 1975, Robert S. Dubin, Esq., counsel for Visor,[4] wrote the Surety and presented a formal claim on behalf of Visor for $23,000 plus interest from April 22, 1975. The Surety responded to this claim by letter dated October 13, 1975, set out in full infra. Apparently this letter was the last contact plaintiff had with the Surety until the institution of this action on December 1, 1976. Plaintiff, in its opposition brief to the Surety's motion, alleges that in reliance upon this letter its counsel continued to negotiate a settlement in an effort to resolve the matter of whether the work under the subcontract had been completed and whether plaintiff was, therefore, entitled to payment from the prime contractor. Plaintiff alleges that it was not until early 1976 that it became aware that Tranter was in severe financial difficulty and would not be in a position to settle the matter.

Meanwhile, on April 23, 1975, Attorney Dubin forwarded to the School District a "Preliminary Notice of Intention to File a Mechanics Claim" and a "formal Notice of Intention to File a Mechanics Claim". The threatened lien would be filed pursuant to the Mechanics' Lien Law of 1963, Pa.Stat. Ann. tit. 49, § 1101, et seq. (Purdon). According to the formal notice the lien would be in the amount of $11,500, would be for work done and material supplied by Visor for Tranter between December 18, 1974 and April 23, 1975, and the property subject to the lien would be the Kulpmont Elementary School. However, it appears that no lien was ever timely filed in order to perfect. See document number 30, Exhibit M in support of the School District's motion, letter from Mr. White, Esq., attorney for Tranter, to Mr. Stanley Zlocki, Esq., solicitor for the Mount Carmel Area School District. It also appears that a no claim agreement was timely filed pursuant to Pa.Stat. Ann. tit. 49, § 1402 (Purdon). See document 32, exhibit Q in support of the School District's motion, affidavit of Stanley Zlocki.

On July 25, 1975, Attorney Duben wrote to Mr. Zlocki and requested that "(he) exercise (his) authority under the mechanics' lien law and withhold from the prime contractor the sum of no less than $23,000." See document 30, exhibit F in support of the School District's motion.[5] On August 22, 1975 Mr. Zlocki wrote to Tranter, with a carbon copy to Mr. Dubin, stating that pursuant to the authority given to the School District under the mechanics' lien law it was withholding from Tranter $23,000 of the amount due under the prime contract.[6]

After that August 22nd letter, Mr. White wrote two letters to Mr. Zlocki informing him that a lien in this situation was not possible under the law, see discussion infra, demanded payment, and threatened suit in the event payment was not forthcoming. On November 6, 1975 the School District released the withheld $23,000 to Tranter, see document 32, exhibit S, affidavit of Joseph Warner, Superintendent of the Mount Carmel Area School District, and on December 23, 1975, after receiving the necessary documents under the prime contract, see discussion infra, made the final payment to Tranter. See document 32, Exhibit S. Hence, the School District has paid the full amount due under the prime contract.

Mr. Dubin states that after August 22, 1975 he had several conversations with Mr. Zlocki wherein the latter related that the funds were being withheld. Mr. Dubin does not state when these representations were made. He alleges that he relied on this promise of the School District's solicitor and took no further action. He avers that it was not until early 1976 that he became

---

4. Mr. Dubin is not representing plaintiff in this action.

5. Prior to that letter Mr. Dubin avers that Mr. Zlocki had twice orally represented to him that funds would be withheld.

6. Mr. White had previously written Mr. Zlocki and stated that they (White and Zlocki) concur that the School District could, inter alia, withhold enough money from Tranter to cover any exposure on the Visor claim. See document 30, exhibit E.

aware that the funds were no longer being withheld. *See* document 38, exhibit 11, affidavit of Robert S. Dubin.[7]

*The motion of defendant Aetna Casualty and Surety Company.*

As stated, the Surety has moved for judgment on the pleadings on the grounds that plaintiff is barred by the running of the statute of limitations. In ruling on this motion I will consider the information submitted by plaintiff in opposition to the motion and will construe the motion as one for summary judgment.

The relevant considerations here are: (1) What is the applicable statute of limitations? (2) When did this limitation period begin to run? (3) When was suit filed? and (4) Has anything occurred which would toll the running of the statute or which would estop defendant Surety from asserting it as a defense?

■ According to both the bond law and the bond itself no action may be instituted for payment under the bond " . . . after the expiration of one year from the day on which the last of the labor was performed and material was supplied for the payment of which such action is brought by the claimant." Pa.Stat.Ann. tit. 8, § 197(b) (Purdon); document 30, exhibit J, Payment Bond, page 3. It is uncontroverted that the last labor performed or material supplied by plaintiff to Tranter for which payment is now being sought under the bond occurred prior to April 23, 1975. However, plaintiff seems to be arguing that since there was a dispute between Visor and Tranter as to whether the second phase of the subcontract had been duly completed and, hence, as to whether Visor was entitled to the second payment, there is, therefore, a genuine issue of material fact as to when the limitation period began to run.[8] Plaintiff

also states that it was not until early 1976 that it discovered that Tranter was in financial difficulty, see supra, and that since it filed within one year of this discovery the filing was timely. Both these contentions are without merit. The relevant consideration is when the last labor or material was supplied, not whether the second payment was in fact due nor when plaintiff became aware of Tranter's financial difficulty. I find that the statute began to run on or about April 22, 1975. Since this action was not filed until December 1, 1976, it is barred by the limitations period unless that period has been tolled or unless the Surety is estopped from asserting it as a defense.

■ Plaintiff's only argument is that the Surety, because of its actions, namely the letter of October 13, 1975, should be estopped from asserting the statute of limitations as a defense. In full the letter stated:

Dear Mr. Dubin:

A (w) 57 SC 173741 RG

DEVON TRANTER, INC.

BOND NUMBER 57 SB 024730 BCA

MT. CARMEL AREA SCHOOL DISTRICT

The letter of 9/4/75 forwarded to our Philadelphia Office has been forwarded to our Harrisburg Office for response in light of the fact that the bond mentioned above was underwritten through this office.

I am a claim representative of the Aetna Casualty Company and have discussed the points in question put forth in your letter of 9/4/75 with our principal Devon E. Tranter.

Mr. Tranter explained this situation in detail to me. We do carry a contract bond with him and have no reason as his bond carrier to believe that Mr. Tranter and his company are responsible people.

---

7. On February 19, 1976 Mr. Dubin wrote to Mr. Zlocki inquiring as to the present situation in regards to the withheld money. This letter was never answered.

8. Plaintiff, both in its complaint, and according to the affidavit of its president, see document 38, exhibit 4, maintained that the second phase was duly completed and approved by the archi-

tect and that the second payment, $11,500, was due on April 22, 1975. However, as stated, in responding to the Surety's motion plaintiff seems to assert that the second phase may not have been completed as of April 22, 1975 and that the second payment may not have been due at that time.

As you may know, our involvement in a situation like this would only come about in the event of the Devon E. Tranter, Inc. Company fails to do business or be able to handle their business. (sic)

I am forwarding you letter to our principal for their attention and shall assume that the matter will be brought to a conclusion by them to the satisfaction of all parties concerned.

Please understand that any attention we give this matter is purely without prejudice to any of the parties involved.[9]

I accept for purposes of ruling on this motion plaintiff's allegations that it relied to its detriment on this letter by: (1) attempting a settlement with Tranter in an effort to resolve the question of whether the second phase had been completed under the subcontract; (2) thinking that Tranter was not in financial difficulty; and (3) believing that its claim under the bond was not ripe. And I agree with plaintiff that a defendant asserting the bond law statute of limitations as a bar to the action may, as may any defendant asserting any statute of limitations, be estopped from raising it as a defense. Cf. Travelers Indemnity Company v. Rexnord, Inc., 37 Pa.Cmwlth. 20, 389 A.2d 246 (1978).[10] But the issue is not whether the defendant may be estopped, but whether estoppel is appropriate.

■ There is no dispute that the law of Pennsylvania is to be applied here. In Walters v. Ditzler, 424 Pa. 445, 227 A.2d 833 (1967), the Supreme Court of Pennsylvania summarized the applicable legal principles to be applied when a plaintiff attempts to estop a defendant from asserting the statute of limitations as a bar to the action. The court stated:

(a) Mere mistake, misunderstanding or lack of knowledge do not toll the running of the statute of limitations: Schaffer v. Larzerlere, 410 Pa. 402, 405, 189 A.2d 267 (1963) and authorities therein cited; (b)

If, through fraud, deception or concealment of facts, an insurance company lolls an injured person or his representatives into a sense of security so that such person's vigilance is relaxed, then the company is estopped from asserting the statute: Schaffer v. Larzelere, supra, p. 405, 189 A.2d 267, and authorities therein cited; (c) The fraud which will toll the statute and effect an estoppel need not be fraud in the strictest sense, i. e. inclusive of an intent to deceive, but may be fraud in the broad sense, i. e. inclusive of an unintentional deception: Nesbitt v. Erie Coach Co., 416 Pa. 89, 96, 204 A.2d 473 (1964); Schweb v. Cornell, 306 Pa. 536, 539, 160 A. 449 (1932); (d) An estoppel becomes operative only in clear cases of fraud, deception or concealment . . . pp. 449–450, 227 A.2d p. 835.

Plaintiff, as the party asserting the estoppel, bears the burden of establishing the fraud or concealment by evidence that is clear, precise, and convincing. See Courts v. Campbell, 245 Pa.Super. 326, 369 A.2d 425 (1976). If the facts are not in dispute, a determination as to whether defendant should be estopped from asserting the statute of limitations as a bar is a question for the court. See Huber v. McElwee-Courbis Const. Co., 392 F.Supp. 1379 (E.D.Pa.1974). The key is what a defendant did during the time the statute was running to induce the plaintiff to sit on its rights. See id.

■ The only behavior of defendant that plaintiff points to in support of its estoppel argument is, as stated, the letter of October 13, 1975. But that letter contains no promises or representations which might conceivably be expected to induce plaintiff to sit on its rights. As a matter of law, the letter does not represent the type of behavior by the defendant Surety that must be shown in order to claim an estoppel. The key fact is not whether plaintiff did in

---

9. There appears to be an unintentional omission in the third paragraph of this letter or in the copy provided the court. The court assumes that the word "not" should appear between the word "are" and the word "responsible" in that third paragraph.

10. That case concerned an acquiescence by a Surety in an extension agreement regarding payment by the principal to the subcontractor. This acquiescence tolled the statute. The case did not concern the bond law and in any event is inapplicable to the facts presented here.

actuality rely to its detriment, but whether the behavior of defendant was such that it could reasonably induce such reliance, i. e. did the defendant act in such a deceptive or fraudulent manner as defined by *Walter v. Ditzler*, supra? I think not. Plaintiff's failure to timely file in reliance on the letter can not be attributed to the defendant Surety. Furthermore, assuming that settlement discussions were going on between Visor and Tranter, such discussions would not effect a tolling of the limitations period. Nor, absent acquiescence by the Surety, would any representations made by Tranter or the School District be binding on the Surety. *Cf. General Insurance Company of America v. United States for the use of Audley Moore and Son*, 406 F.2d 442 (5th Cir. 1969), cert. denied 396 U.S. 902, 90 S.Ct. 214, 24 L.Ed.2d 178 (1969). In sum, as a matter of law, accepting everything that plaintiff has alleged as true, it has not approached meeting its burden. The statute of limitations has run and, hence, plaintiff is barred from bringing this action against the Surety.[11, 12]

## MOTION BY THE SCHOOL DISTRICT

Plaintiff seeks recovery from the School District on various grounds, see infra. The School District seeks summary judgment on the grounds that (1) Plaintiff's sole remedy here is either under the bond law or against Tranter and (2) each of the grounds upon which plaintiff seeks to hold the School District liable is insufficient as a matter of law. I will first consider the contention that the bond and the Pennsylvania Bond Law provide an exclusive remedy for plaintiff. This appears to be a question of first impression.

In order to decide this question, it is necessary to first determine the purpose of the bond law. Among other things,

it is designed to protect a contracting body such as the School District by assuring faithful performance of the contract. It is also meant to protect subcontractors such as Visor. This is done by requiring that before a contracting body such as the School District can enter into a construction contract exceeding $5,000 it must be provided with a payment bond by the contractor. *See* Pa.Stat.Ann. tit. 8, §§ 192(2), 193(a)(2) (Purdon). Both the bond law and the bond itself specifically state that the purpose of the payment bond is " . . . for the protection of claimants supplying labor or materials to the prime contractor . . ." Pa.Stat.Ann. tit. 8, § 193(a)(2); document 30, exhibit J, Payment Bond. The Bond Law provides a substitute remedy for subcontractors who are excluded from the protection of the mechanics' lien law of 1963. Pa.Stat.Ann. tit. 49, § 1101, et seq. (Purdon). *See Valley Forge Industries v. Armand Construction*, 248 Pa.Super. 53, 374 A.2d 1312 (1977). Under the mechanics' lien law of 1963 no lien is allowed for labor or materials furnished for a purely public purpose. Pa.Stat.Ann. tit. 49, § 1303(b) (Purdon). This would include furnishing labor or materials for a public school and, hence, Visor could not avail itself of the remedies under that law. *Cf. America Seating Co. v. Philadelphia*, 434 Pa. 370, 256 A.2d 599 (1969). Therefore, the whole point of this bond law, vis a vis plaintiff and the Kulpmont Elementary School construction project, was to provide Visor with a remedy in the event it was not paid for supplied materials and labor. However, that does not automatically answer the question of whether the law is intended as an exclusive remedy or whether Visor in the situation here can still maintain a separate action against the School District.

---

11. If plaintiff has any other facts upon which it believes an estoppel may be appropriately invoked against the Surety regarding the statute of limitations, it may, within ten (10) days of the date of this memorandum, move for reconsideration and submit these facts, by affidavit or other appropriate document, to the court.

12. The School District opposed the granting of the Surety's motion. However, the School District did not advance any substantive arguments beyond that advanced by plaintiff. Furthermore, since the School District's motion for summary judgment is being granted, I consider both its opposition to the Surety's motion and its cross claims to be moot.

Since there is little case law in Pennsylvania interpreting the bond law, the logic used in interpreting an equivalent federal law, the Miller Act, 40 U.S.C., § 270a et seq., has been applied in interpreting the Pennsylvania bond law. *See Lite-Air Products, Inc. v. The Fiduciary and Deposit Co. of Maryland*, 437 F.Supp. 801 (E.D.Pa.1977). As with the bond law, one of the purposes of the Miller Act is to provide security for those subcontractors supplying labor and materials to the government. *See Fanderlik-Locke Company v. U. S.*, 285 F.2d 939 (10th Cir. 1960). And, as with the bond law, the Miller Act is affording a substitute remedy for materialmen because they cannot get a lien on public buildings and have no enforceable rights against the United States for their compensation. *See U. S. v. Munsey Trust Co.*, 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947). It has been consistently held that if a subcontractor on a United States government construction project is not paid, its only remedy is an action under the Miller Act, it cannot proceed against the United States government. *See U. S. v. Munsey Trust Co.*, id.; *Warrior Constructors, Inc. v. Herders, Inc.*, 387 F.2d 727 (5th Cir. 1967); *U. S. v. Cleveland Electric Co.*, 373 F.2d 585 (4th Cir. 1967). This is true even if the United States government is withholding money from the prime contractor. *Cf. Warrior Constructors, Inc. v. Herders, Inc.*, 387 F.2d 727 (5th Cir. 1967).

Plaintiff argues that the Miller Act cases are not applicable in this situation because the reason that the subcontractors cannot go against the United States government is sovereign immunity, something the School District does not have. The only authority plaintiff has for that proposition is allegedly found in a government brief filed in *U. S. v. Blair*, 321 U.S.

730, 64 S.Ct. 820, 88 L.Ed. 1039 (1944), *See* document 38, exhibit 12, and in the case of *Merritt v. U. S.*, 267 U.S. 338, 45 S.Ct. 278, 69 L.Ed. 643 (1925). Neither the aforementioned government brief, which is not authority, nor the *Merritt* case, id., provide anywhere near clear support for plaintiff's position. Nevertheless, even assuming that sovereign immunity plays a part in making the Miller Act the exclusive vehicle for subcontractors on federal government projects to recover monies due them, it does not follow that because the School District does not enjoy sovereign immunity that the bond law should not be the exclusive remedy for Visor. The Pennsylvania Legislature decided that no liens could attach against a public building such as the Kulpmont Elementary School, see discussion supra, so it provided a substitute remedy for subcontractors. I believe that absent independent behavior which would make the School District liable to a subcontractor for other reasons, and given a valid payment bond and a School District which has paid in full for its construction project, the exclusive remedy available to plaintiff in order to receive payment for materials and labor supplied when the prime contractor has failed to pay is under the bond law and the payment bond. It would simply make no sense to hold that Visor could sleep on its rights under the bond and the bond law and then be able to turn around and proceed against the School District.[13] The bond law and the bond would then provide no protection for the School District in the event a subcontractor was not paid. If the plaintiff had not slept on its rights it would have been able to collect from the bond company for money owed for material and labor supplied.

However, having decided that Visor's remedy under the bond law is normally

---

13. Visor argues that the School District can seek indemnification against the bond company or Tranter should it be found liable here. But if the Surety could be forced to indemnify the School District now for monies which could have been collected under the bond, the one year statute of limitations would be a nullity, And the fact that the School District might be able to seek indemnification from Tranter is irrelevant if it is not proper for the School District to be held liable in the first instance. *See* discussion infra for why the School District cannot be held liable for amounts beyond material and labor allegedly owed to Visor by Tranter.

exclusive,[14] two issues still need to be resolved. (1) In not timely filing under the bond, did Visor reasonably rely on any behavior or promise by the School District such that it would be appropriate to hold the school District liable for the amounts that could have been collected under the bond? and (2) Since the Surety would, under the bond, only pay the amount due for materials and labor actually supplied, *see Lite-Air Products, Inc. v. Fidelity and Deposit Co. of Maryland*, 437 F.Supp. 801 (E.D. Pa.1977), and hence, the bond remedy is, as stated, only exclusive as to those amounts ($11,500) which could have been collected under the bond, is there any basis upon which the School District can be held liable for monies allegedly owed on the subcontract beyond that $11,500?

 Promissory estoppel is the doctrine under which, if appropriate, the School District might be held liable to plaintiff for that amount which would have been collectable from the Surety had this action been timely instituted. Promissory estoppel, "that promises will be enforced when the promisee reasonably relied and injustice can be avoided only by enforcement (of the promise) is the law in Pennsylvania". *Murphy v. Burke*, 454 Pa. 391, 398, 311 A.2d 904, 908 (1973). The doctrine is set out in Restatement Second, Contracts § 90, which provides:

> Promise reasonably inducing action or forbearance. A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires".

 Plaintiff's claim is that the school district promised to withhold $23,000 (the full amount left to be paid on the subcontract) and it (Visor) relied on this promise by not timely instituting suit against the

bond company. I accept for the purposes of ruling on this motion the fact that the promise to withhold was made by the School District, that the promise was that the money would be withheld pending the resolution of the Visor/Tranter dispute, and that plaintiff relied on this promise by not timely filing against the Surety. However, for numerous reasons, I believe that as a matter of law the School District (by its solicitor's letter and representations) should not reasonably have expected to induce any forbearance vis a vis plaintiff and the Surety and that Visor's reliance was not reasonable.

First, the School District's promise to withhold was prompted, at least in part, by plaintiff's threat to levy a mechanics' lien against the Kulpmont Elementary School. However, no such mechanics' lien is possible under the law, see supra, the lien was not perfected, and a no claim agreement had been filed which would have precluded plaintiff from filing a mechanics' lien even if it were statutorily possible. *See* discussion supra. Furthermore, the subcontract itself provided for a waiver of the right to maintain a mechanics' lien. *See* document 30, exhibit B, subcontract, § 9. Hence, plaintiff should have realized it was precluded from filing a mechanics' lien and it would be unreasonable to expect that the School District would continue to withhold based on the threat of such a lien. Secondly, even assuming the School District was going to withhold based on the mechanics' lien law, such withholding is not mandatory, *See* Pa.Stat.Ann. tit. 49, §§ 1601, 1604, and it is not reasonable to expect the School District to continue to withhold. This is especially true after plaintiff did not, as required by the mechanics' lien law, file its lien within the four month period. Thirdly, plaintiff states that it was relying on oral representations made prior to the August 22nd letter, *See* document 38, exhibit 11, that the School District was withholding funds so that Visor could be paid. How-

---

**14.** Exclusive in the sense that Visor is precluded from maintaining an action against the School District for labor and materials sup-

plied. I, of course, have not ruled that Visor may not proceed against Tranter.

ever, after the August 22nd letter plaintiff should have realized that the money was being withheld because of the mechanics' lien law and, as stated, expecting the School District to continue to withhold based on that law is not reasonable. Fourthly, plaintiff knew in early 1976 that the funds were no longer being withheld.[15] The statute of limitations did not run until on or about April 22, 1976. After finding out that funds were not being withheld. plaintiff was totally unjustified in foregoing its rights under the bond. Fifthly, even if the School District did continue to withhold, plaintiff might not necessarily be the one entitled to the money. Other creditors of Tranter might have claims on the money. Lastly, under the prime contract the School District was obligated to pay Tranter when certain documents were provided the School District. This included an affidavit from Tranter that no claims were outstanding, see document 30, exhibit A, the prime contract, page CC–16, lines 13 through 20. Tranter supplied this affidavit along with an agreement to hold the School District harmless for any claims. See document 30, Exhibits M. N. & O. The architect then recommended making the final payments to Tranter. Although the School District knew of Visor's claim and for the purpose of this motion I assume that the School District knew that the claim had not been settled, it had also been informed that Visor had made a claim on the Surety. See document 32, Exhibit Q. The School District was justified in relying on the fact that Visor would be protected by the bond for labor and materials supplied. And the School District could not be expected to withhold more than $11,500 because the people who did the rest of the work would also be entitled to payment. In sum, and simply put, the School District did not reasonably expect to induce action on the part of plaintiff vis a vis the bond and plaintiff acted unreasonably in forebearing from instituting suit on the bond in reliance on the School District's promise to withhold money where the School District had no duty, statutorily or otherwise, to withhold such mon-

ey and where plaintiff had a clear remedy under the bond.

The last issue is whether the School District can be held liable for Tranter's alleged breach, i. e. Can the School District be held liable for any monies which would not have been covered by the bond? The theories under which plaintiff seeks to hold the School District liable here are: (1) Under the doctrine of promissory estoppel, and as a result of plaintiff's reliance upon the School District's continued withholding of the $23,000, the School District is the quasi contractual escrow agent and/or stake holder for the benefit of plaintiff; (2) Visor is a third party beneficiary of the prime contract and, hence, the School District is liable for the unpaid amount due on the subcontract; (3) the School District has been unjustly enriched by Visor's completion of the subcontract and, therefore, the School District owes plaintiff $11,500 in restitution; (4) due to the School District having withheld the $23,000 from Tranter, the School District is the garnishee in favor of Visor; and (5) also because of the plaintiff's reliance on the continued withholding of the $23,000, the School District became and is the constructive, equitable, and/or resultant trustee in favor of plaintiff. I will consider each of these contentions seriatim.

## PROMISSORY ESTOPPEL

First, plaintiff argues that since the money was withheld, it refrained from instituting garnishment procedures. This is a meritless assertion since a garnishment proceeding is an attachment procedure for enforcing a judgment. There had been no judgment here until after this suit was instituted. Also, a garnishment procedure is not available against the school district. See 15 P.L.E. § 193, Note 32. Beyond that assertion and the alleged reliance regarding forebearing from suing on the bond, see discussion supra, there has been no other alleged reliance on the promise. Plaintiff has not lost any remedies against Tranter (whatever practical value they may have).

---

**15.** It is not known how plaintiff acquired this information.

Since I have found as a matter of law that forebearing from suit on the bond was not reasonable and since there is no other alleged reasonable reliance, there can be no recovery based on the theory of promissory estoppel. As for the theory of quasi contract, see discussion infra regarding unjust enrichment.

## VISOR AS THIRD PARTY BENEFICIARY

■■■■ The parties agree that the applicable Pennsylvania Law regarding third party beneficiaries is stated in *Spires v. Hanover Fire Insurance Company*, 364 Pa. 52, 70 A.2d 828 (1950). There the Pennsylvania Supreme Court said:

> "To be a third party beneficiary entitled to recover on a contract it is not enough that it be intended by *one* of the parties to the contract and the *third person* that the latter should be a beneficiary, but both *parties to the contract* must so intend and must indicate that intention in the contract; in other words, a promisor cannot be held liable to an alleged beneficiary of a contract unless the latter was within his contemplation at the time the contract was entered into and such liability was intentionally assumed by him in his undertaking; the obligation to the third party must be created, and must affirmatively appear in the contract itself;"

I believe it is clear that Tranter and the School District had no intention of creating a right in a subcontractor to be a third party beneficiary. Although the prime contract does indicate an intention that subcontractors be paid, *see* document 30, exhibit A, the prime contract, page CC–8, lines 42–43, page CC–9, lines 1 through 8, it does not evidence any intention that the subcontractor be paid as a beneficiary under the prime contract. In fact, the contract specifically states, "Neither the owner or the architect shall have any obligation to pay or to see to the payment of any monies to any subcontractor except as may be otherwise required by law." *See* document 30, Exhibit A, the prime contract, page CC–9 lines 9–10. Furthermore, plaintiff is precluded from going against the School District for the monies owed for materials and labor supplied, *see* supra. I think it is especially clear that there is no intention that the School District be liable for any breach of the subcontract by Tranter involving nonpayment for materials and labor not actually supplied.[16]

■■■■ In addition, even if the plaintiff were a third party beneficiary of the prime contract, it could not prevail here. A third party beneficiary is one who, although not a party to the contract, and hence, not in privity with the promisor (here the School District), is permitted to enforce the contract between the promisor and promisee for its (the third party beneficiary's) benefit. But a third party beneficiary's rights are subject to any defense that would be available to the promisor where he is being sued on the same contract by the promisee. *See United States v. Industrial Crane and Manufacturing Corporation*, 492 F.2d 772 (5th Cir. 1974); *International Brotherhood of Electrical Workers Local Union No. 308 v. Days Electric Service, Inc.*, 382 F.Supp. 427 (D.Fla.1974). In other words, the School District could assert against Visor any defenses it might have against Tranter. The School District has paid the contract in full. There has been full performance by the promisor. Hence, no action can lie by a third party beneficiary looking to enforce the contract. The contract has already been performed.

**16.** Contrary to plaintiff's assertion, I do not believe that the subsequent behavior of the School District, namely the withholding of the $23,000, evidences an intent to create a third party beneficiary in Visor. Also, *Pennsylvania Supply Co. v. National Casualty Company*, 152 Pa.Super. 217, 31 A.2d 453 (1943) *is no help to* plaintiff. There a subcontractor was found to be a third party beneficiary under a bond and contract executed between a surety, owner, and contractor, even though the bond didn't expressly say it was for the benefit of materialmen. No one contends here that plaintiff, before the statute of limitations ran, did not have a valid right of payment under the bond.

**924**

*Unjust Enrichment*

 First, since under this theory plaintiff is only looking to recover monies for the labor and materials supplied, it cannot succeed because its exclusive remedy was under the bond. *See* discussion supra. Secondly, under Pennsylvania law, the elements of a duty to make restitution under the theory of unjust enrichment require (1) an enrichment and (2) an injustice resulting if recovery for the enrichment is denied. *See Meehan v. Cheltenham Township* 410 Pa. 446, 189 A.2d 593 (1963). Here there is no injustice when recovery for the $11,500 is denied. The School District has paid in full and, as stated supra, even though when it paid it knew of Visor's outstanding claim, it could justifiably have expected that the subcontractor had an adequate and complete remedy for the collection of the $11,500 owed under the bond and the bond law.

*School District as Garnishee*

Plaintiff has not submitted anything in opposition to the School District's motion for summary judgment on the count of the complaint asserting that the School District is a garnishee in favor of plaintiff. Therefore, under Local Rule of court 301.01(e) this part of the School District's motion for summary judgment is deemed unopposed. Also, under Fed.R.Civ.P. 56(e) I believe it appropriate that summary judgment motion be granted on this count. Furthermore, this theory is inapplicable to the facts of this case. *See* discussion supra.

*School District as Constructive, Equitable and/or Resultant Trustee*

Plaintiff has also not submitted anything in opposition to the School District's motion as to this count. Therefore, under local rule of court 301.01(e), it is deemed that the motion is unopposed as to this count. And under Fed.R.Civ.P. 56(e) I believe it appropriate that summary judgment be granted as to this count. Furthermore, the contention that the School District is some sort of trustee here is without merit. *See generally Gray v. Liebert*, 357 Pa. 130, 53 A.2d 132 (1947) and discussion supra regarding unjust enrichment.

In sum, Plaintiff's exclusive remedies for monies allegedly owed for materials and labor supplied to the Kulpmont Elementary School under the subcontract with Tranter were under the bond and the bond law or against Tranter. Having lost the bond remedy due to a failure to timely file an action against the Surety, it cannot now proceed against the School District for those monies. Furthermore, as to any other money beyond that owed for materials and labor supplied and allegedly due Visor because of the asserted breach of the subcontract by Tranter, Visor's sole remedy is against Tranter.

### ORDER

NOW, this 14th day of December 1978 in accordance with the accompanying memorandum this date filed, it is hereby ordered that defendant Aetna Casualty & Surety Company's motion for judgment on the pleadings is construed as a motion for summary judgment and is granted. Defendant Mount Carmel Area School District's motion for summary judgment is also granted. It is further ordered that judgment shall be entered for defendants Mount Carmel Area School District and Aetna Casualty & Surety Company. Lastly, it is ordered that this action is dismissed.