Wyndham R. WHITLEY and Elisabeth M. Whitley, Plaintiffs,

v.

HARTFORD ACCIDENT AND INDEMNITY COMPANY, Defendant.

Civ. A. No. 3-80-0310-H.

United States District Court, N. D. Texas, Dallas Division.

April 16, 1981.

J. Ralph Howell, Jr., Dallas, Tex., for plaintiffs.

D. Paul Dalton, Jackson, Walker, Winstead, Cantwell & Miller, Dallas, Tex., for defendant.

## MEMORANDUM OPINION

SANDERS, District Judge.

In this diversity case, Plaintiff Elisabeth Whitley seeks to recover under an insurance

policy issued by the Defendant for the costs of medical treatment and services required by her husband, Wyndham Whitley, after a 1976 automobile accident. Wyndham Whitley died during the pendency of this action and, although no formal substitution of parties has yet been made, the Court has treated Elisabeth Whitley as the proper representative for the claims urged herein. The Defendant has moved for Rule 56(a) summary judgment asserting that the action is barred by the statute of limitations in the Pennsylvania No-Fault Motor Vehicle Insurance Act, 40 Pa.Cons.Stat.Ann. § 1009.-101 *et seq.* While disputing that either Pennsylvania statutory or substantive law should govern this action, Plaintiff alternatively contends that the Defendant is estopped from invoking the limitations bar because its representations reasonably led her and her husband to delay any legal action until after the period had run.

After a review of the briefs and affidavits submitted by both parties, the relevant case law and the pleadings on file, the Court concludes that the Defendant's summary judgment motion should be granted.

### Principles for Summary Judgment

■ Under Rule 56, summary judgment can only be granted "if *everything* in the record—pleadings, depositions, interrogatories, affidavits, etc.—demonstrates that no genuine issue of material fact exists." *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980). The burden of proof falls upon the party seeking the summary judgment, and all reasonable doubts as to the existence of a genuine issue of a material fact "must be resolved against the moving party." *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980). *See Alabama Farm Bureau Mutual Casualty Co. v. American Fidelity Life Insurance Co.*, 606 F.2d 602, 609 (5th Cir. 1979).

■ In order to avoid the grant of summary judgment, a party must demonstrate both the existence of a material fact and a genuine issue as to that material fact. *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893 (5th Cir. 1980). The court must draw all reasonable inferences from undisputed facts in favor of the party resisting the motion in determining whether any genuine issue exists. *American Telephone & Telegraph Co. v. Delta Communications Corp.*, 590 F.2d 100, 101–102 (5th Cir.), *cert. denied*, 444 U.S. 926, 100 S.Ct. 265, 62 L.Ed.2d 182 (1979). The issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial. *See First National Bank of Arizona v. Cities Services Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Munoz v. International Alliance*, 563 F.2d 205, 214 (5th Cir. 1977).

With these stringent criteria for summary judgment in mind, the Court has searched the record before it for genuine issues of material fact.

### Contacts Between the Whitleys and Hartford

The undisputed facts in this case show that in 1975 the Defendant Hartford Accident and Indemnity Company (Hartford) issued an automobile insurance policy to the Whitleys through its representative, Loesel Insurance Agency. At the time of the issuance of the policy, the Whitleys were living in Erie, Pennsylvania, and it is uncontested that the delivery of the policy and payment of the premiums were made in that state.

On January 27, 1976, the Whitleys were involved in an automobile accident in Dallas, Texas, in which Wyndham Whitley received serious injuries. As a result of these injuries, Whitley required hospitalization and extensive medical services. The initial contact with Hartford in regard to any recovery under the Whitley insurance policy for these expenses was made by their son-in-law, J. Reynolds Van Cleve, in the spring of 1976 through the Loesel agency. Hartford's records show that notice of the Whit-

ley claim was received from the Loesel agency on May 28, 1976.

During 1976, payment of benefits by Hartford under the insurance policy were made to or on behalf of Wyndham Whitley for partial costs of his medical treatment. The last payment of any significant amount —$865.00—was made on July 19, 1976. Three subsequent disbursements were made by Hartford, the last on February 20, 1978, for photocopying charges of Whitley's medical records and, in one instance, a physician's fee for completion of an insurance form.

Elisabeth Whitley, who with her husband had returned to Pennsylvania in 1976, entered into a trust agreement with Union Bank & Trust Company, Erie, Pennsylvania. Union Bank officials subsequently agreed to assist the Whitleys in the handling of remaining claims for medical and hospital services under the Hartford insurance policy. From late 1976 until the institution of this litigation, Union Bank personnel were in contact with Hartford's local agent, Loesel, and other company personnel regarding Mr. Whitley's case. In August 1977, a Hartford claims representative reviewed Mr. Whitley's file at the bank and subsequently requested a detailed listing of his medical expenses in May 1978.

Shortly after the Whitleys returned to Dallas in November 1977, a Hartford representative visited Mr. Whitley at a Dallas convalescent home and "talked to him". [Van Cleve affidavit] Six months later, the Hartford representative again sought information on his condition and informed Mr. Whitley that the Dallas claims office was assuming control over his insurance claim. In July 1979, Van Cleve met with Millie Sanders of the Hartford Dallas office where "[s]he explained that Hartford wanted to make a settlement; that [the Whitleys] were to choose an attorney to represent [them] in effecting a settlement, to be approved in some sort of proceeding in court in Dallas." [Van Cleve affidavit].

On July 31, 1979, Sanders met with Van Cleve and counsel for the Whitleys but no resolution was reached of the disputed Whitley claim. Thereafter, negotiations continued with Hartford representatives of the Dallas office until the instant action was filed on February 19, 1980, in state court and removed to federal court pursuant to 28 U.S.C. § 1441 on March 17, 1980. The undisputed testimony of Van Cleve is that during the course of the negotiations Hartford did not deny liability for Mr. Whitley's claims but rather seemed to indicate that "it was always a matter of arriving at a settlement of the amount of Hartford's liability." [Van Cleve affidavit].

The essence of the Defendant's motion for summary judgment is that the Plaintiff's action is time-barred under the two-year statute of limitations in the Pennsylvania No-Fault Act. The Plaintiff argues, however, that the Texas four-year limitations period governs in this case and that the equitable doctrine of waiver and estoppel precludes the Defendant from invoking any limitations bar. The resolution of this dispute requires the application of traditional choice-of-law doctrines and recognition of the comity principles they represent.

### Choice of Law

The Defendant contends that since the Plaintiff Elisabeth Whitley pitches her right to recovery on the automobile insurance policy, the Pennsylvania No-Fault Motor Vehicle Insurance Act and Pennsylvania substantive law shape the Plaintiff's remedy and must govern the statute of limitations question. The two main prongs of the Plaintiff's response are that the insurance policy is essentially a contract with a Texas resident which should be interpreted under Texas law, and that a foreign limitations statute is merely a procedural matter which under Texas law cannot bind this diversity court.

The clear command of *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) is that federal courts must apply the substantive law of the forum state in diversity of citizenship actions. The *Erie* doctrine requires, therefore, that a federal court apply the choice-of-law rules

of the jurisdiction in which it sits. *Klaxon v. Stentor, Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *New York Life Insurance Co. v. Baum*, 617 F.2d 1201, 1204 (5th Cir. 1980). Under Texas conflicts law, in the absence of a contrary manifestation, an initial presumption is that the parties intend for the law of the jurisdiction where the contract is made to govern. *Dailey v. Transitron Electronic Corp.*, 475 F.2d 12 (5th Cir. 1973); *Austin Building Co. v. National Union Fire Ins. Co.*, 432 S.W.2d 697 (Tex.1968).

This general rule, however, is subject to two qualifications. Texas courts have long recognized that parties to a contract, under certain circumstances, may specify in the instrument that it is to be governed by the law of a particular state and that law will apply if it has a reasonable relationship to the contract. *Dugan v. Lewis*, 79 Tex. 246, 14 S.W. 1024, 1026 (1891); *Securities Investment Company of St. Louis v. Finance Acceptance Corporation*, 474 S.W.2d 261 (Tex.Civ.App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.); *Hi Fashion Wigs Profit Sharing Trust v. Hamilton Investment Trust*, 579 S.W.2d 300 (Tex.Civ.App.—Eastland 1979, no writ). *See also* Tex.Bus. & Comm.Code § 1.105(a).

In addition, in *Gutierrez v. Collins*, 583 S.W.2d 312 (Tex.1979), the Texas Supreme Court adopted the position of the Restatement (Second) that the law of the place with the most significant relationship to the occurrence will control in common law torts actions. Although the court's decision was limited to torts actions, there is some opinion that the decision could also portend the demise of the mechanical choice of law rule governing contract actions in Texas and the incorporation of the "most significant relationship" test. *See, e.g., Abandonment of Lex Loci Delicti in Texas: The Adoption of the Most Significant Relationship Test*, 33 Southwestern L.J. 1221, 1233 (1980).

■ Applying all of these tests to the record in this case, the Court finds that Pennsylvania substantive law should govern the interpretation of the contract for insurance between these parties. One indicator

of the parties' intention that Pennsylvania law govern their contractual rights and duties under the insurance policy is the provision in the policy that personal injury protection "shall be in accordance with the Pennsylvania No-Fault Motor Vehicle Insurance Act." (Personal Injury Protection Endorsement, Section I, pp. 5–6). Even in the absence of an effective choice of law by the parties, the *Austin* rule of law of the place of contracting requires application of Pennsylvania law since it is undisputed that the Plaintiffs were Pennsylvania residents at the time they secured the insurance policy through Hartford's representative in Erie, Pennsylvania. In addition, Pennsylvania is the state with the most significant relationship to issues under the insurance policy since the policy was issued pursuant to that state's regulatory statute; delivery of the policy and payment of premiums were made in Pennsylvania; and the processing and payment of the Whitley claims was handled in Pennsylvania for a significant period of time by an Erie, Pennsylvania, bank on behalf of the Whitleys. Pennsylvania rules of decision should apply in this case, therefore, regardless of which conflict of law methodology is adopted.

The second branch of the Plaintiff's choice of law theory is not resolved by the Court's decision to apply Pennsylvania statutory and substantive law. Mrs. Whitley argues that the two-year statute of limitations in the no-fault act is merely a matter of procedure which should not be applied in opposition to the four-year limitations statute of the forum state, Texas.

■ The Plaintiff's position is correct that generally matters of procedure are governed by the internal law of the forum state even if the conflict of laws rules of the forum require that the law of another state apply to the substantive issues in the case. *See* 1A, Pt. 2, *Moore's* Federal Practice ¶ 0.311[1]. It is a well-recognized conflicts of law principle in Texas, however, that an exception has been carved out of this general rule where:

the statute creates a right and also incorporates a limitation upon the time within

which a suit is to be brought, the limitation qualified the right so that it becomes a part of the substantive law rather than procedural, and ... unless suit is brought with the time allowed by statute no right of action can be maintained even though the law of the forum provides for a longer period of limitation.

*State of California v. Copus*, 309 S.W.2d 227, 231 (Tex.1958). *See also, Francis v. Herrin Transportation Company, Inc.*, 423 S.W.2d 610 (Tex.Civ.App.—Houston [14th Dist.] 1968), *rev'd on other grounds*, 432 S.W.2d 710 (Tex.1968); *Gaston v. B.F. Walker, Inc.*, 400 F.2d 671 (5th Cir. 1968). Thus, under the *Copus* principle, this Court has refused to allow a Texas plaintiff to circumvent the corporate reporting requirements of Canadian law on the grounds that they were merely procedural. *Fleeger v. Clarkson Co. Ltd.*, 86 F.R.D. 388 (N.D.Tex. 1980).

The limitations statute which the Plaintiff seeks to avoid is an integral part of the regulatory system created by the Pennsylvania legislature "to establish at reasonable cost to the purchaser of insurance, a statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims and the survivors of deceased victims." 40 Pa.Cons.Stat.Ann. § 1009.102(b). The contour of the Plaintiff's claims for relief under the insurance policy is both defined and controlled by the provisions of the no-fault statute. An action to enforce these rights and obligations created by statute and incorporated into the insurance policy is, therefore, inextricably linked to the Act's statute of limitations. Since the relief which the Plaintiff seeks in this case is clearly predicated on the provisions of the insurance policy and the no-fault statute, Texas conflicts of law rules require that the Act's statute of limitation be deemed a part of Pennsylvania substantive law and applied instead of any general Texas statute of limitations.

*Is the Plaintiff's Claim Time-Barred?*

The Pennsylvania statute requires that any action to recover further no-fault benefits "for loss arising otherwise than from death" must be commenced "not later than two years after the last payment of benefits." 40 Pa.Cons.Stat.Ann. § 1009.-106(c)(1). The Defendant contends that the limitations period was triggered by the July 19, 1976, payment of $865.00 in benefits to the Whitleys and thus expired long before the initiation of this action on February 19, 1980. Under the interpretation of the statute urged by the Plaintiff, however, the February 20, 1978, disbursement by Hartford for copying charges constituted a "payment of benefits" so as to toll the statute from 1976 until 1978. The language and definitions of the statute itself must provide the lexicon to determine which of the two interpretations is correct.

"No fault benefits" as used in the statute's limitations provision is defined as "basic loss benefits, added loss benefits or both." 40 Pa.Cons.Stat.Ann. § 1009.103. The two benefit terms are further explained by the statute:

"Added loss benefits" means benefits provided by added loss insurance in accordance with section 207 of this Act.

"Basic loss benefits" means benefits provided in accordance with this Act *for the net loss sustained by a victim*, subject to any applicable limitations, exclusions, deductibles, waiting periods, disqualifications, or other terms and conditions provided or authorized in accordance with this Act ...." (Emphasis added)

40 Pa.Cons.Stat.Ann. § 1009.103. Added loss insurance is described in Section 207 of the Act as encompassing:

(1) Loss excluded from basic loss benefits by limits on allowable expense, work loss, replacement services loss, and survivor's loss;

(2) benefits for damage to property;

(3) benefits for loss of use of a motor vehicle;

(4) benefits for expense for remedial religious treatment and care;

(5) for physical damage to a motor vehicle, coverage for all collision and upset damage, subject to an optional deductible; and

196

(6) for economic detriment, a coverage for work loss sustained by a victim in excess of limitations on basic loss benefits for work loss.

40 Pa.Cons.Stat.Ann. § 1009.207.

The Hartford draft on which the Plaintiff relies was issued on February 20, 1978, to the Western Reserve Convalescent Homes in Erie, Pennsylvania, in the amount of $5.00 and designated as payment for medical records. Exhibit G submitted by the Defendant documents that the draft was to reimburse Western Reserve for "clerical expenses for photocopies of Wyndham Whitley File No. 143 AF 29216".

Neither the copying charges nor the Hartford draft can reasonably be termed basic loss benefits since they in no way represent "net loss sustained by a victim". 40 Pa.Cons.Stat.Ann. § 1009.103. Likewise, the definition of added loss benefits and the scope of that type of insurance under Section 207 cannot be strained to accommodate the Plaintiff's interpretation of the $5.00 reimbursement as a "payment of benefits". The February 20, 1978, payment by Hartford to Western Reserve, therefore, cannot be deemed a "payment of benefits" so as to revive the limitations period which expired two years after the July 19, 1976, benefits payment on July 19, 1978. Pursuant to the provisions of the Pennsylvania no-fault statute, consequently, the Plaintiff's claim would be time-barred.

■■■ Even if the Pennsylvania two-year statute of limitations applies, the Plaintiff argues that the Defendant is estopped from raising the defense because its actions reasonably led the Plaintiff to delay legal action until after the limitations period had run. Pennsylvania courts have recognized and adopted the doctrine of estoppel which will bar application of a statute of limitations "if through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry . . . ." *Nesbitt v. Erie Coach Co.,* 416 Pa. 89, 204 A.2d 473 (1964). The Plaintiff, however, must bear the burden of proving the existence of such fraud or concealment "by evidence that is clear, pre-

cise and convincing." *Id.* Mere negotiations toward an amicable settlement afford no basis for an estoppel nor do mistakes, misunderstandings or lack of knowledge in themselves toll the running of the statute. *Id.*

The showing which the Plaintiff must make as a prerequisite for the application of estoppel:

does not mean fraud in the strictest sense encompassing an intent to deceive, but rather fraud in the broadest sense which includes an unintentional deception. It is not the intention of the party estopped but the natural effect upon the other party which gives vitality to an estoppel . . . . If the circumstances are such that a man's eyes should have been open to what is occurring, then the statute begins to run from the time when he could have seen, but if by concealment, through fraud or otherwise, a screen has been erected by his adversary which effectually obscures the view of what has happened, the statute remains quiescent until actual knowledge arises. *Id.*

In *Nesbitt,* where the Pennsylvania Supreme Court defined the estoppel concept, an insurance adjuster was found to have made false statements which reasonably induced the plaintiff to expect a settlement. The Plaintiff there was told that there was no need to hire an attorney, that the claim could not be settled until the full extent of her injuries were known, and not to worry because her claim would be continued by the agency in her best interests. In addition, the insurance adjuster was specifically instructed not to mention the statute of limitations by his superior. The Court concluded that these facts would be sufficient to give rise to estoppel against the insurance company.

Other cases wherein estoppel has been applied by Pennsylvania courts exhibit similar fact patterns of deliberate concealment. In *Commonwealth of Pennsylvania, Dept. of Welfare v. UEC, Inc.,* 483 Pa. 503, 397 A.2d 779 (1979) the Supreme Court found sufficient fraud to apply the doctrine of estoppel where high government officials,

including the Secretary of the Department of Public Welfare and its general counsel, repeatedly gave the plaintiffs their assurances that the Commonwealth would compensate them under the contract. The Court determined that the actions of the defendant in requesting an audit to determine the reasonable value of the plaintiffs services reasonably led the plaintiffs to delay any possible legal action pending completion of the audit and lulled them into a false sense of security regarding the necessity for initiating legal action. The plaintiffs' case therein, furthermore, was seen as particularly compelling because they had performed valuable services for the government, had cooperated with them, and had been more than accommodating in all respects.

Where the plaintiff has failed to prove the existence of fraud or concealment by clear, precise and convincing evidence, the Pennsylvania courts have refused to apply the doctrine of estoppel. In *Walters v. Ditzler*, 424 Pa. 445, 227 A.2d 833 (1965), for example, the Supreme Court found that where the plaintiffs had made no effort to contact the insurance company until almost three years after the initial and sole visit by the adjuster and had failed to institute suit for approximately fourteen months after notice of nonpayment by the insurance company, no adequate showing of fraud had been made. The insurance company could not be held at fault where:

> [a] review of [the] record convinces . . . that there is not even a scintilla of proof of any fraud, concealment or deception such as would justify the invocation of the doctrine of estoppel to toll the running of the statute. On the contrary, this record, clearly and distinctly, indicates that [the plaintiffs] slept on their rights and took no steps whatsoever toward the recovery of compensation . . . . *Id.*

*See also Finn v. Dugan*, 260 Pa.Super. 367, 394 A.2d 595 (1978).

 The Plaintiff has failed to provide this court with competent summary judgment evidence that would raise a material question of fact as to the application of the estoppel doctrine. There is no "clear, precise and convincing" evidence in the record before this court, or any evidence supporting the inference, of fraud, concealment or deception by Hartford Accident in its dealings with Plaintiff or her deceased husband. The Whitleys delegated responsibility for handling their claim to the Union Bank officials in late 1976; it appears from Plaintiff's affidavits that Plaintiffs did not have any personal contact with Hartford until at least November 1977. The Plaintiff does not allege that the Defendant misled her or her husband, or falsely led them to believe that the claim would be paid during the limitations period. The only possible indication which the Plaintiff gives of any detrimental reliance on the Defendant's alleged representations is in July 1979 when Plaintiffs say they were advised to secure an attorney for settlement negotiations. This conversation took place, however, over three years after the accident, two years after the Whitleys had received any payments from Hartford, and one year after the limitations period had run. As the *Nesbitt* court pointed out, mere negotiations toward an amicable settlement afford no basis for an estoppel, although Hartford of course retained the power to settle the claim if it so desired. The Court, therefore, is compelled to find that the Plaintiff's failure to file this action within the two year limitations period provided in Pennsylvania's no-fault statute, was not a result of any fraud or misrepresentation on the part of the Defendant.

The Motion for Summary Judgment is GRANTED and judgment will be entered accordingly.

SO ORDERED.