## Nesbitt, Appellant, *v.* Erie Coach Company.

Argued September 30, 1964. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*William G. Sesler,* with him *Daniel L. R. Miller,* and *Bryan, Joslin, Bryan & Sesler,* and *Washabaugh, McClure & Miller,* for appellant.

*John E. Britton,* with him *Gifford, Graham, Mac-Donald & Illig,* for appellee.

OPINION BY MR. JUSTICE EAGEN, November 10, 1964:

The plaintiff-appellant was injured while riding as a passenger on a bus of the defendant company. The accident occurred on July 11, 1959, but this action for damages was not instituted until January 19, 1962.

The defendant pled the statute of limitations and the plaintiff replied that conduct on the part of the defendant's agents induced the delay in bringing the action, and the defendant was, therefore, estopped from claiming protection of the statute. The defendant filed an answer denying these allegations.

Depositions were then taken of the plaintiff, and of the insurance adjusters who had interviewed the plaintiff during the period of investigation and negotiations towards settlement. Following this, a stipulation was filed of record requesting the court to determine the matters in controversy on the pleadings and testimony taken, as if a motion for judgment on the pleadings had been made by the plaintiff.

After argument, the court entered judgment in favor of the defendant. This appeal followed.

A study of the lower court's opinion indicates that it did not resolve the factual conflict in the testimony offered in deposition, but rather concluded, as a matter of law, that the testimony did not establish sufficient facts to warrant an estoppel. With this conclusion, we do not agree.

The statute of limitations for the institution of an action for personal injuries which do not result in death is two years, Act of June 24, 1895, P. L. 236, §2, 12 P.S. §34. However, if through fraud or concealment the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of limitation of action: *Plazak v. Allegheny Steel Company,* 324 Pa. 422, 188 A. 130 (1936); *Schaffer v. Larzelere,* 410 Pa. 402 189 A. 2d 267 (1963). The burden of proving the existence of such fraud or concealment is

upon the asserting party by evidence that is clear, precise and convincing: *Hertz Corp. v. Hardy,* 197 Pa. Superior Ct. 466, 178 A. 2d 833 (1962); *Bonfitto v. Bonfitto,* 391 Pa. 187, 137 A. 2d 277 (1958). It is also well established that mere negotiations toward an amicable settlement afford no basis for an estoppel, nor do mistakes, misunderstandings or lack of knowledge in themselves toll the running of the statute, 53 C.J.S. Limitations of Actions §25 (1948), and *Schaffer v. Larzelere,* supra.

With these general principles of law in mind, let us examine the record in a light most favorable to plaintiff's case on the limited issue involved.

Following the accident, the plaintiff promptly notified the defendant of her injury and, as a result, an insurance adjuster contacted her within a few days and secured a written statement describing the occurrence. From July 17, 1959, until July 6, 1961, three different insurance adjusters, acting on behalf of the defendant, called upon the plaintiff personally or contacted her by phone many, many times inquiring of her health, physical progress, and possibilities of settlement. That the plaintiff imposed great confidence and trust in these individuals throughout is clear. As early as June 25, 1960, a sum was suggested in settlement which was refused because, as of that date, the extent of the injuries was undetermined. On the same occasion, she was informed not to worry about her claim because the case would be continued by the adjustment agency in her best interests.

Having failed to respond satisfactorily to medical treatment, the plaintiff was hospitalized from March 9 to May 4, 1961, and surgery was performed. During this period, one of the insurance adjusters involved visited her. Before this visit, he was informed by his employer that, in his employer's opinion, no liability existed, and was instructed to offer a small

sum as a nuisance settlement. He made no offer, did not inform the plaintiff of the insurance carrier's position as to liability, and, on the contrary, told her that it would be impossible to settle the case at that time because the extent of the injuries was not known.

On June 1, 1961, the plaintiff forwarded a letter to the same adjuster inquiring about the possibility of an interim payment to take care of her pressing financial problems, and also the advisability of retaining the services of an attorney. On June 11, 1961, she was visited by this adjuster. He told her, inter alia, that the defendant would have to pay her hospital and doctor bills because of its responsibility for her injury; "why hire an attorney and pay him when we haven't refused you yet"; that the case was still open and active; that he would write to the home office and ask if interim payments were possible and asked, "Do you mind waiting a little while longer for an answer?"; that he (the adjuster) was getting married, but not to worry and he would see her again on his return.

The same adjuster visited the plaintiff again on July 6, 1961, five days before the expiration of the statute. He informed her that the carrier was not empowered to make interim payments; that only one check could be issued *when all of the facts were in* and the case was settled to their mutual satisfaction; and that the plaintiff would be cheating herself if she agreed to settle before the full extent of the injuries was known. Again he concealed the fact that the carrier considered the case one of nonliability. Admittedly, he did not mention the statute of limitations because before this visit he had discussed this point with a superior and was specifically instructed not to do so. He inquired of and noted the additional expenses that had been incurred. Upon leaving, he said

that he would see her again and that she should phone him if anything turned up.

The plaintiff was never contacted again.

If the above facts are true, and in our opinion this question has not yet been determined,[1] the circumstances could reasonably lead to the conclusion that the conduct of the defendant's agents caused the plaintiff to unduly relax her vigilance and delay institution of the present action to a time beyond the statutory limitation period. This would give rise to an estoppel.

Equitable estoppel applies where, because of something that has been done, a party is denied the right to plead or prove an otherwise important fact: 19 Am. Jur. Estoppel §34 (1939). It is based upon the principle that " 'a person is held to a representation made or a position assumed, where otherwise inequitable consequences would result to another who, having the right to do so under all the circumstances of the

---

[1] This matter was presented to the court below as a motion for judgment on the pleadings in an unorthodox manner. Undoubtedly, the parties intended to constitute the lower court a trial court, without jury, to determine the question of the application of the statute of limitations. The testimony was in conflict in important respects. If the lower court resolved certain important facts against the plaintiff, its ultimate conclusion was clearly correct. However, our study of the opinion is not convincing that this is what the court did. To us, it appears that the court ruled that even if everything the plaintiff testifed to was correct, still an estoppel would not be raised. As noted before, with this we do not agree.

While the court concluded that the adjusters involved did not violate the tenets dealing with estoppel and that the delay in bringing suit was the result of the plaintiff's own "unfortunate laxity," it is certainly not clear whether it was thus ruling upon the credibility of the witnesses or merely holding that the evidence was insufficient to work an estoppel as a matter of law. To enter a final judgment upon this state of the record would lead to confusion in an important area.

case, has in good faith relied thereon' ": *Antone v. New Amsterdam Casualty Co.,* 335 Pa. 134, 140, 6 A. 2d 566 (1939). See also, *Sunseri v. Sunseri,* 358 Pa. 1, 55 A. 2d 370 (1947). "Whether an estoppel results from established facts is a question for the determination of the court: (Cases cited). It is for the jury to say whether alleged remarks were made, but it is for the court to decide whether they are susceptible of the inferences attributed to them. That statements should give rise to an estoppel they must be clear and reasonably certain in their intendment." *General Electric Co. v. N. K. Ovalle, Inc.,* 335 Pa. 439, 445, 6 A. 2d 835, 838 (1939).

In order for the doctrine of estoppel to be applied in bar of the statute of limitations, fraud or concealment must necessarily be established. However, this does not mean fraud in the strictest sense encompassing an intent to deceive, but rather fraud in the broadest sense which includes an unintentional deception: *Guy v. Stoecklein Baking Co.,* 133 Pa. Superior Ct. 38, 1 A. 2d 839 (1938). "It is not the intention of the party estopped but the natural effect upon the other party which gives vitality to an estoppel": 5 Williston, Contracts §691 (3rd ed. 1961). As stated in *Schwab v. Cornell,* 306 Pa. 536, 539, 160 A. 449, 450 (1932): "If the circumstances are such that a man's eyes should have been open to what is occurring, then the statute begins to run from the time when he could have seen, but if by concealment, through fraud *or otherwise,* a screen has been erected by his adversary which effectually obscures the view of what has happened, the statute remains quiescent until actual knowledge arises." (Emphasis ours).

If all of the facts related hereinbefore are correct, they would certainly support a conclusion that the agents of the defendant misled the plaintiff into believing that the case would be settled when all of the

facts were in, and thus lulled her into a sense of false security as to timely institution of her action.

Until the disputed facts are resolved, an intelligent and fair judgment is impossible.

Judgment vacated and case remanded with directions to the court below to make complete findings of fact and enter an order consistent therewith.

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I agree with the majority's statement of the law— except the partial quotation from *Schwab v. Cornell*, 306 Pa. 536, 539, 160 A. 449, 450, which is too broad and general. However, I disagree with their application to the facts in this case. The interpretation and application made by the majority opens wide the door to fraud and perjury by one who ignorantly or carelessly or with intent to derive an advantage therefrom, sleeps on his rights beyond the Statute of Limitations. For this reason I would affirm the judgment of the lower Court.