542 A.2d 650

Commonwealth of Pennsylvania, Department of Transportation, Petitioner *v.* Dyberry Sand & Gravel, Inc., Respondent.

Argued April 21, 1988, before Judges MacPhail and Smith, and Senior Judge Barbieri, sitting as a panel of three.

*Robert J. Shea,* Assistant Counsel, with him, *Kenneth Lee Sable,* Assistant Counsel, *John L. Heaton,* Chief Counsel, for petitioner.

*Lee C. Krause,* for respondent.

OPINION BY JUDGE MACPHAIL, June 13, 1988:

The Department of Transportation (DOT) appeals from a decision of the Board of Claims (Board) which awarded Dyberry Sand and Gravel, Inc. (Dyberry) the full contract price for two deliveries of Type III Anti-Skid Material (Material) delivered by Dyberry to DOT in March of 1984.

Dyberry entered into a contract with DOT on August 19, 1983, to deliver Material to DOT's Engineering District 4-0 during the 1983-1984 snow season. Dyberry delivered its last two shipments on March 7 and 15, 1984, respectively. DOT's normal procedure when material is taken from the vendor's stockpile is for DOT to randomly extract samples of the material for testing in order to ensure that the material meets the specification set forth by the contract. The vendor also has the option of taking companion samples at the time that DOT's samples are taken to conduct their own test of the material in the presence of DOT's material inspector. The result of such tests by the vendor is then recorded in DOT's logbook which is usually kept at the vendor's plant site during the snow season.

On March 7 and 15, 1984, DOT's material inspector directed Dyberry's representative to draw gradation test samples from three different trucks to be sent to Harrisburg for testing. Dyberry's representative also elected to do a gradation test of its own, which showed the Material to be in conformity with the requirements set forth by DOT. The result of Dyberry's test was then recorded in the logbook kept at Dyberry's plant site.

On March 21, 1984, Dyberry was notified that the March 7, 1984 samples were not in conformity with DOT's specification. DOT stated that based on the lack of conformity of the Material it would only pay for sixty-

five percent (65%) of the delivery. On April 4, 1984, Dyberry was also notified that the March 15, 1984 Material sampled was not in conformity with DOT's specification and that DOT would only pay sixty-seven percent (67%) of that delivery.

A meeting was then held between Dyberry and DOT, at which time Dyberry contested DOT's reduction of the invoice prices and requested a retesting of the Material pursuant to DOT's policy. DOT advised Dyberry that there was no Material available for retesting; however, on May 4, 1984, DOT sent a representative to Dyberry's plant to take three (3) investigative samples from the same stockpile that the March 7 and 15, 1984, deliveries were taken. The samples were tested in Harrisburg and found to be within the required specification.

By invoices dated May 21, 1984, Dyberry demanded payment in full. In a letter dated May 25, 1984, DOT refused to pay the full contract price and called Dyberry's attention to the right to file a contract claim under Section 105.01 of the specifications.[1] Plaintiff's Exhibit # 13, Reproduced Record (R.R.) at 24(a). Dyberry then continued to discuss the problem with a representative of the Bureau of General Services and the Bureau of Office Services until October of 1984. The logbook which was kept at Dyberry's plant was removed by DOT shortly after Dyberry received notices that the March 7 and 15 samples were not in conformity with the required specification, and was not recovered by Dyberry until the morning of the hearing. Dyberry then filed this action with the Board on April 1, 1985.

---

[1] Form 408 contract specification 105.01 provides in pertinent part, "[p]resent such claims to the Board of Claims . . . within 6 months from the date the claim accrued, as provided in 72 P.S. [§]4651."

The Board found that the Material delivered by Dyberry on March 7 and 15, 1984, did meet the required specification based on the recordation in the logbook. The Board then awarded Dyberry the full contract price of $3,664.48 with interest at six percent (6%) from the date of filing. DOT has appealed to this court for review.

The first issue raised by DOT is whether the Board erred in concluding that there was substantial evidence to determine that DOT was estopped from claiming the statute of limitations as a defense.[2]

Section 6 of the act which established the present-day Board of Claims Act, (Board of Claims Act), May 20, 1937, P.L. 728, *as amended*, 72 P.S. §4651-6, states that "[t]he board shall have no power and exercise no jurisdiction over a claim asserted against the Commonwealth unless the claim shall have been filed within six months after it accrued."

DOT contends that as of April 1, 1985 when Dyberry filed its claim with the Board, the six (6) month statute of limitations had run. In *Department of Revenue, Bureau of State Lotteries v. Irwin*, 82 Pa. Commonwealth Ct. 266, 269, 475 A.2d 902, 905 (1984), this Court held that "[a] claim accrues for purposes of suit in the Board of Claims when payment is due and is withheld by the Commonwealth. . . . The statute of limitations runs from the time the claimant is affirmatively notified that he will not be paid." (Citation omitted.)

In light of *Irwin*, we hold that there is substantial competent evidence here to show that the claim accrued on May 25, 1984 when Dyberry, through its May

---

[2] Our scope of review of an order of the Board of Claims is limited to determining whether necessary factual findings are supported by substantial evidence and whether an error of law was committed. *Commonwealth v. Rodebaugh*, 102 Pa. Commonwealth Ct. 592, 519 A.2d 555 (1986).

21, 1984 letter, demanded payment and DOT refused to pay the full contract price.[3]

Once the statute of limitations has run, the only way the statute could be tolled in the instant case was if DOT could be estopped from claiming the statute of limitations as a defense. In order for the doctrine of estoppel to apply, Dyberry would be required to show that there was fraud or concealment on the part of DOT. *Department of Public Welfare v. UEC, Inc.*, 483 Pa. 503, 397 A.2d 779 (1979). In *UEC*, the Court cited with approval the following language from *Nesbitt v. Erie Coach Co.*, 416 Pa. 89, 92-93, 204 A.2d 473, 475 (1964):

> [I]f through fraud or concealment the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of limitation of action. (citations omitted) The burden of proving the existence of such fraud or concealment is upon the asserting party by evidence that is clear, precise and convincing. (citations omitted) *It is also well established that mere negotiations toward an amicable settlement afford no basis for an estoppel, nor do mistakes, misunderstandings or lack of knowledge in themselves toll the running of the statute* . . . (citations omitted).

*Id.* at 512-513, 397 A.2d 784 (emphasis added).

---

[3] The body of the refusal letter from DOT reads as follows:

I am responding to your letter of 21 May 1984, regarding Purchase Orders # 08-595-838, Item 46 and # 08-595-846, Item 47.

I feel that we have made our payments to Dyberry Sand and Gravel Company in accordance with the contract and the Specifications and, therefore, I will not change the payment.

If you wish to pursue this matter further, I remind you of Section 105.01 in the Specifications dealing with contract claims.

The Board made no finding of fraud or concealment but nevertheless concluded as a matter of law that, because Dyberry had engaged in what the Board considered "good faith" negotiations, DOT was then estopped from claiming the statute of limitation as a defense. The record shows that Dyberry had full knowledge and was fully aware that DOT did not intend to pay the full contract price nor did DOT intend to negotiate the matter any further. The fact that Dyberry continued to try to resolve the matter until October of 1984, did not toll the statute of limitations. *Irwin.*

Dyberry also claims that because the logbook was taken from Dyberry's plant site, Dyberry did not have the necessary information to adequately prepare its claim. We find this argument to be ill-founded. Mr. Irwin, (owner of Dyberry) testified that he personally performed the tests and therefore knew what information was or would have been written in the logbook. Thus, he did not actually need physical possession of the logbook to prepare his claim.

The record reflects the following testimony by Mr. Irwin:

Q. Referring to the letter you say the results were recorded in the daily logbook.

A. Yes, Sir.

Q. Did you know that?

A. I certainly would assume that they are.

Q. I didn't ask you to assume they were. My question is, did you know the results were in the daily log and that they were satisfactory?

A. I have to answer that in two parts. I knew that tests were satisfactory because I ran them myself. Whether he actually put them in the log, I wouldn't know because I did not check on him. I check on myself.

Chairman McLaughlin: I think that answer would be, he assumed there [sic] were in the log book.

The Witness: Yes, Sir, I'm sorry.

N.T. at 163-164, R.R. at 135a-136a.

We therefore find that the Board erred as a matter of law in concluding that DOT was estopped from claiming the statute of limitations as a defense, and consequently the Board lacked jurisdiction to hear the matter pursuant to Section 6 of the Board of Claims Act, 77 P.S. §4651-6.[4]

### ORDER

The order of the Board of Claims in the above captioned proceeding is vacated, and the suit is dismissed.

---

[4] The second issue raised by DOT claiming that the Board erred in relying on an issue not raised by Dyberry need not be discussed in light of our holding that the Board lacked jurisdiction to hear any aspect of the case.