# Frost v. Perrigo Company

C.P. of Allegheny County, no. GD01-3465.

*Alan M. Perer* and *Robert M. Haggard,* for plaintiff.
*Clem C. Trischler,* for defendants Perrigo Company and Giant Eagle Inc.
*Alice S. Johnston* and *Jonathan Price,* for defendants Teva Pharmaceuticals USA Inc. and Copley Pharmaceuticals Inc.

WETTICK JR., *J.,* January 21, 2003—On October 20, 1997, Florence E. Frost died as a result of a hemorrhagic stroke. Shortly before the stroke, Ms. Frost had ingested an over-the-counter decongestant (Di-Bromm) which contained phenylpropanolamine (PPA). In this wrongful death and survivor action, the complaint of Scott N. Frost, administrator of the estate of Florence E. Frost, deceased (plaintiff) alleges that the ingestion of PPA was the cause of the stroke. Plaintiff's complaint also alleges that Copley manufactured and Perrigo and Giant Eagle distributed the Di-Bromm which caused the stroke.

The lawsuit was commenced through the filing of a writ of summons on February 22, 2001. Thereafter, plaintiff filed a complaint raising the following counts: (1) negligence, (2) strict liability and tort, (3) fraud, deceit and intentional misrepresentation, (4) negligent misrepresentation, (5) express warranty, (6) implied warranty of merchantability, and (7) violations of consumer protection statutes.

Motions for partial summary judgment filed by defendants seeking dismissal of the tort claims based on a statute of limitations defense are the subject of this opinion and order of court.

Tort claims are governed by a two-year limitation period. Under Pennsylvania case law, the discovery rule does not apply to wrongful death and survival actions. *Pastierik v. Duquesne Light Co.,* 514 Pa. 517, 526 A.2d 323 (1987). However, fraud or concealment that causes a plaintiff to relax his or her vigilance or deviate from his or her right of inquiry will serve as a basis for estopping the defendant from raising the statute of limitations defense in a wrongful death and survival action. *Molineux v. Reed,* 516 Pa. 398, 532 A.2d 792 (1987).

Defendants base their summary judgment motion on Pa.R.C.P. 1035.2 (2) which provides that summary judgment shall be granted if, after completion of discovery relevant to the motion, the party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action which in a jury trial would require the issues to be submitted to a jury. Under the case law, plaintiff has the burden proving concealment by evidence which is clear, precise, and convinc-

ing.[1] *Molineux v. Reed, supra.* It is defendants' position that the evidence upon which plaintiff relies cannot satisfy this burden.

Plaintiff relies on the following evidence to support his contention that defendants are estopped from raising the statute of limitations as a defense because defendants caused plaintiff to relax his vigilance and deviate from his right of inquiry.

Prior to his wife's death, plaintiff learned that his wife had ingested Di-Bromm tablets on the day she became ill.[2] Around the time of his wife's death, plaintiff asked Dr. John Moossy (Ms. Frost's treating physician who had performed emergency brain surgery on October 10, 1997) whether her stroke was caused by the Di-Bromm. Dr. Moossy stated that he was not aware of any connection between a hemorrhagic stroke and Di-Bromm.

Plaintiff relied on Dr. Moossy's statement that there was no connection between this stroke and the ingestion of the Di-Bromm tablets.[3] Consequently, plaintiff did not conduct any further inquiry as to whether there may have been a connection between the stroke and the Di-Bromm until October 2000 when he was shown a recent *Newsweek* article connecting strokes with PPA. The *Newsweek* article was based on a recently released Yale University study that linked PPA with an increased risk

---

1. In deciding whether plaintiff has met this burden, I must consider the evidence in the light most favorable to plaintiff.

2. This information is also contained in the medical records.

3. Also, prior to his wife's death, plaintiff read the package inserts; there was no reference to an increased likelihood of strokes.

of hemorrhagic stroke in women.[4] After reading the *Newsweek* article, plaintiff obtained a copy of the Yale study, he retained counsel, and he instituted this lawsuit on February 22, 2001.

In order to extend the statute of limitations for the tort claims from the date upon which it would have otherwise expired (October 20, 1999), plaintiff must establish that defendants committed acts of concealment upon which the plaintiff justifiably relied.

In *Lange v. Burd*, 800 A.2d 336, 339 (Pa. Super. 2002), the Superior Court described the concealment doctrine as follows:

"A cause of action for negligence is governed by a two-year statute of limitations. 42 Pa.C.S. §5524(2). It is the duty of the party asserting a cause of action to use all reasonable diligence to properly inform himself of the facts and circumstances upon which the right of recovery is based and to institute suit within the prescribed period. *Cappelli v. York Operating Co. Inc.*, 711 A.2d 481, 485 (Pa. Super. 1998) (quoting *Hayward v. Medical Center of Beaver County*, 530 Pa. 320, 324, 608 A.2d 1040, 1042 (1992)). Where a defendant or his agent misleads the plaintiff as to the identity of the proper defendants until after the statute of limitations has expired, the proper remedy is to toll the statute of limitations. *Hubert* v. *Greenwald*, 743 A.2d 977, 981 (Pa. Super. 1999). If through fraud or concealment the defendant causes the plaintiff to relax his or her vigilance or devi-

---

4. Ralph I. Horwitz M.D. et al., Phenylpropanolamine and Risk of Hemorrhagic Stroke: Final Report of the Hemorrhagic Stroke Project (*New England Journal of Medicine,* November 2000).

ate from his or her right of inquiry, the defendant is estopped from invoking the bar of the statute of limitations. *Molineux v. Reed,* 516 Pa. 398, 403, 532 A.2d 792, 794 (1987). *The defendant must have committed some affirmative independent act of concealment upon which the plaintiffs justifiably relied. Kingston Coal Co. v. Felton Mining Co. Inc.,* 456 Pa. Super. 270, 690 A.2d 284, 291 (1997). *Mere mistake or misunderstanding is insufficient. Molineux.* Also, *mere silence in the absence of a duty to speak cannot suffice to prove fraudulent concealment. Sevin v. Kelshaw,* 417 Pa. Super. 1, 9, 611 A.2d 1232, 1236 (1992). The burden of proving such fraud or concealment, by evidence which is clear, precise and convincing, is upon the asserting party. *Nesbitt v. Erie Coach Company,* 416 Pa. 89, 204 A.2d 473 (1964)." (emphasis added)

Also, see *Molineux v. Reed, supra,* 516 Pa. at 402-403, 532 A.2d at 794:

"The governing principles relevant to the establishment of a claim of estopped based on fraud or concealment are as follows. Where, 'through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry,' the defendant is estopped from invoking the bar of the statute of limitations. *Schaffer v. Larzelere,* 410 Pa. 402, 405, 189 A.2d 267, 269 (1963). Moreover, defendant's conduct need not rise to fraud or concealment in the strictest sense, that is, with an intent to deceive; unintentional fraud or concealment is sufficient. *Walters v. Ditzler,* 424 Pa. 445, 227 A.2d 833 (1967); *Nesbitt v. Erie Coach Company,* 416 Pa. 89, 204 A.2d 473 (1964). Mere mistake, misun-

derstanding or lack of knowledge is insufficient however, *Schaffer v. Larzelere, supra;* and the burden of proving such fraud or concealment, by evidence which is clear, precise and convincing, is upon the asserting party. *Nesbitt v. Erie Coach Company, supra.*"

It is plaintiff's position that the evidence will show that prior to the date of Ms. Frost's death, defendants knew that the ingestion of medicine with PPA created an increased risk of hemorrhagic stroke in women. However, they neither included, nor made an effort to include, a warning regarding the increased risk of stroke in their package inserts or labels.

While defendants contend that the evidence does not support a finding that they knew of any connection between PPA and an increased risk of stroke, it is also the position of defendants that the failure to include a known risk on a label or package insert is not sufficient to establish concealment because silence is not an act of concealment. However, silence is not an act of concealment only where there is no duty to disclose. *Lange v. Burd, supra.* Where, as in the present case, there is a duty to disclose known risks, the failure to do so constitutes an affirmative independent act of concealment, assuming the drug manufacturer or distributor knows of the risk.

Furthermore, in this case the failure to include a known risk on the label or packaging insert may constitute an act of concealment upon which plaintiff justifiably relied (the second requirement for the concealment doctrine). According to plaintiff's testimony, he would have discovered the connection between DiBromm and strokes if this information had been included on the label or the

package inserts. Also, a fact-finder may conclude that Dr. Moossy would have known, as of the date of Ms. Frost's death, that Di-Bromm may have caused her stroke if a connection between PPA and strokes was set forth on labels or packaging inserts of medicine containing PPA.

I next consider whether the evidence which plaintiff has submitted may support a finding that defendants knew that the ingestion of medicine containing PPA would increase the risk of hemorrhagic stroke.

In his brief, plaintiff refers to what defendants knew or should have known. Plaintiff relies on the affidavit of Dr. Donald H. Marks to support his contention that defendants knew or should have known that an increased risk of stroke was associated with the use of medicine containing PPA.[5] In the affidavit, Dr. Marks refers to at least 883 articles published in the medical literature and scores of pharmacological treatises; 37 articles cited by the Yale study (all but four were published between 1979 and 1997); and adverse PPA reaction reports referred to by the FDA. Dr. Marks concludes that in the face of this type of industry-wide information, "the manufacturers/ sellers intentionally and/or *unintentionally* concealed the true risk of PPA from not only the public but from the medical profession by the following actions which are not all inclusive." (emphasis added) (Exhibit 4 to plaintiff's brief in opposition, Marks' affidavit at 5-6.)

In his brief, plaintiff's counsel, after summarizing the information in the exhibits, states that defendants "*are*

---

5. The affidavit is accompanied by an appendix containing exhibits A-U and a supplemental appendix containing exhibits A and B.

*chargeable* with having knowledge of the PPA/stroke risk long before Florence Frost died" (emphasis added) (plaintiff's brief in opposition at 17); defendants have a common-law duty to know of the risks and dangers posed by their product (*id.* at 18); and defendants failed to warn the medical profession or the public of the danger "[d]espite clearly having knowledge of the stroke risk associated with their PPA products—or *at the very least having an obligation to know of this risk."* (emphasis added) *Id.*

A finding as to what defendants should have known will not support the application of the concealment doctrine because a mistake or misunderstanding (*i.e.,* a negligence standard) is not sufficient to trigger the concealment doctrine. The concealment doctrine requires a finding of an affirmative act of concealment which caused the plaintiff to relax his vigilance. In this case, this requires a finding that defendants had actual knowledge of a risk that the label or package insert should have described—*i.e.,* an increased risk of hemorrhagic stroke.[6] See *Lange v. Burd, supra,* 800 A.2d at 339 (citation omitted) ("The defendant must have committed some affirmative independent act of concealment upon which the plaintiffs justifiably relied. . . . Mere mistake or misunderstanding is insufficient."); *Molineux v. Reed, supra,* 516 Pa. at 403, 532 A.2d at 794 ("Mere mistake, misunderstanding or lack of knowledge is insufficient . . ." ).

---

6. While actual knowledge can be established through circumstantial evidence, evidence that supports a finding of what a party should have known does not necessarily support a finding of what a party actually knew.

Since I am ruling that the standard is not what defendants should have known but rather whether defendants had actual knowledge that the label or package inserts describing their medicine did not include a risk that should have been included, plaintiff shall file a supplemental brief, which discusses the evidence that plaintiff will offer to support a finding of actual knowledge under a clear, precise, and convincing standard of proof. The brief shall specifically describe as to each defendant the precise evidence upon which plaintiff relies to support a finding of actual knowledge that medicine containing PPA increases the risk of hemorrhagic stroke.

Defendants argue that even if it can be established that they had actual knowledge that their labels and package inserts omitted a known risk of which they were aware, the concealment doctrine cannot apply because of the evidence which plaintiff has offered in support of his position as to what defendants knew or should have known. According to defendants, the concealment doctrine cannot apply where there is the vast amount of information available to the public, described in Dr. Miller's affidavit, allegedly linking strokes to products containing PPA.

This argument would have merit if I was considering the discovery rule. However, under the concealment doctrine, plaintiff's claim is that the defendants' concealment (in this case, the withholding of what they were required to disclose) caused plaintiff not to exercise the diligent investigation that should have been undertaken. It is for a trier of fact to determine whether reliance on a label that did not include the risk of stroke justified

plaintiff's failure not to further explore the possibility of a link between Di-Bromm and his wife's stroke. For these reasons, I enter the following order of court:

## ORDER

On January 21, 2003, upon consideration of defendants' motion for partial summary judgment, it is hereby ordered that:

(1) within 30 days, plaintiff shall file a supplemental brief as described in the opinion accompanying this order of court; and

(2) within 15 days, defendants shall file a reply brief.